## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SFP FRANCHISE CORPORATION, *et al.*,[1] | Case No. 20-10134 (JTD) |
| Debtors. | (Joint Administration Requested) |

### DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING POSTPETITION USE OF CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION, (III) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(B), AND (IV) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), by and through their undersigned counsel, submit this motion (the "Motion") requesting entry of an interim order (the "Interim Order"),[2] and a final order (the "Final Order" and together with the Interim Order, the "Cash Collateral Orders") (i) authorizing the use of Cash Collateral (as defined below), (ii) granting adequate protection to the Senior Agent (as defined below), for the benefit of itself and the Senior Lenders (as defined below) solely to the extent provided for in the Cash Collateral Orders, (iii) scheduling a final hearing (the "Final Hearing") pursuant to Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") 4001(b)(2) to be held before this Court to consider entry of the Final Order, and (iv) granting related relief. In support of this Motion, the Debtors submit the *Declaration of Craig M. Boucher in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration"), filed contemporaneously herewith and incorporated herein by reference. In further support of the Motion, the Debtors respectfully state as follows:

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: SFP Franchise Corporation (6248); and Schurman Fine Papers (1409). The location of the Debtors' principal place of business is 300 Oak Bluff Lane, Goodlettsville, Tennessee 37072.

[2] Capitalized terms used but not otherwise defined herein shall have the same meanings ascribed to such terms as in the Interim Order.

## PRELIMINARY STATEMENT

The Debtors' ability to continue their operations without interruption is essential for the Debtors to maximize the value of their estates for the benefit of all stakeholders. As set forth in the First Day Declaration, following their evaluation of all available options, the Debtors determined that filing for Chapter 11 protection, utilizing Cash Collateral (with the consent of the Senior Agent, Senior Lenders and Subordinated Creditor) and pursuing an orderly liquidation of their assets in a controlled, court-supervised environment (the "Liquidation") is the best available option to maximize value for the Debtors and their stakeholders. The Debtors believe that the Chapter 11 process, including the proposed Liquidation, will provide the greatest recovery for their creditors

Prior to the Petition Date, the Debtors solicited bids from four (4) leading national liquidation firms. To initiate the closing of Debtors' store locations in the United States (the "Store Closings"), the Debtors entered into the consulting agreement dated as of January 17, 2020 (the "Consulting Agreement"), by and between the Debtors, as "Merchant" thereunder (the "Merchant"), and a joint venture comprised of Gordon Brothers Retail Partners, LLC ("GB") and Hilco Merchant Resources, LLC ("Hilco" and, together with GB, the "Consultant"). The Debtors intend to utilize the services of the Consultant to liquidate all their remaining inventory and close all of their stores.

Accordingly, because the Debtors' continued use of Cash Collateral during the pendency of these cases is essential to preserve and maintain the value of their estates by effectuating the Liquidation, the Debtors request authorization to use Cash Collateral pursuant to the terms of the Cash Collateral Orders.

## JURISDICTION AND VENUE

1.     The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).[3] Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.     The legal bases for the relief requested in this Motion are sections 105(a), 361, 362, 363 and 507 of the of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended and modified, the "Bankruptcy Code"), Bankruptcy Rules 2002, 4001, 6003, 6004 and 9014 and Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules") 2002-1, 4001-2 and 9013-1.

## BACKGROUND

3.     On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code commencing the above-captioned chapter 11 cases (the "Chapter 11 Cases"). Concurrently with the filing of this Motion, the Debtors have requested joint administration and procedural consolidation of the Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b).

4.     The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No party has requested the appointment of a trustee or examiner in these Chapter 11 Cases and no statutory committee has been appointed.

---

[3] Pursuant to rule 9013-1(f) of the Local Rules, the Debtors hereby confirm their consent to entry of a final order by the Court in connection with this Motion if it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

5.      A detailed description of the Debtors and their businesses, and the facts and circumstances supporting this Motion and these Chapter 11 Cases, are set forth in greater detail in the First Day Declaration, filed contemporaneously herewith and incorporated herein by reference.

## SUMMARY OF THE DEBTORS' PREPETITION INDEBTEDNESS

### A.    The Senior Loan Documents

6.      On April 17, 2009, the Debtors and certain subsidiaries, as borrowers and guarantors, entered into a financing agreement (as amended from time to time prior to the Petition Date, collectively, the "Senior Loan Agreement" and, together with the other Loan Documents, as defined in the Senior Loan Agreement, collectively, the "Senior Loan Documents") with Wells Fargo Bank, National Association, in its capacities as administrative agent and collateral agent (in such capacities, "Senior Agent"), and the lenders party thereto (the "Senior Lenders").  Under the Senior Loan Documents, the lenders the Senior Agent and Senior Lenders provided a revolving credit facility in the maximum principal amount of $35,000,000 to the Debtors.

7.      As of the Petition Date, the Debtors, were jointly and severally indebted and liable to the Senior Agent and Senior Lenders under the Senior Loan Documents in an aggregate principal amount not less than $6,675,159.85, consisting of Advances (as defined in the Senior Loan Agreement) in the aggregate principal amount of $6,625,159.85 and Letters of Credit (as defined in the Senior Loan Agreement) in the aggregate undrawn face amount of $50,000.00, plus all interest accrued and accruing thereon, together with all costs, fees, expenses (including attorneys' fees and legal expenses) and all other Obligations (as defined in the Senior Loan Agreement) accrued, accruing or chargeable in respect thereof or in addition thereto

(collectively, the "Senior Prepetition Obligations").  Pursuant to the Senior Loan Agreement and other Senior Loan Documents, each Debtor granted senior liens upon and security interests in substantially all of such Debtor's assets (collectively, the "Senior Prepetition Collateral") to the Senior Agent for the benefit of itself and the Senior Lenders as security for the Obligations (collectively, the "Senior Prepetition Liens").

8.      In addition to the Senior Prepetition Collateral, the Senior Agent is the beneficiary under that certain Letter of Credit No. 12500046-00-000 in the face amount of $10,000,000 issued by PNC Bank, National Association on behalf of the American Greetings Corporation ("AG"), which Letter of Credit is governed by that certain Limited Guaranty, dated as of April 17, 2009 (as amended from time to time prior to the Petition Date), made by AG in favor of the Senior Agent.

**B.      Junior Security Agreement**

9.      On June 25, 2019, the Debtors, SFP Canada and Subordinated Creditor entered into a Security Agreement (the "Junior Security Agreement") pursuant to which the Debtors granted a security interest over their present and after-acquired property to secure the obligations owing under the Supply Agreement, the Trademark License Agreement, the POS Data Services Agreement, the Marketing Services Agreement, the American Greetings Guarantee, and any other documents, purchase orders, or other agreements between the Debtors and American Greetings, all subject to the Subordination Agreement.  As of the Petition Date, the Debtors owe not less than $38,706,673.00 for amounts that have accrued under the AG Agreements (collectively, the "Prepetition Subordinated Obligations").

10.      On June 25, 2019, Senior Agent and (i) AG, (ii) Carlton Cards Limited, and (iii) Papyrus-Recycled Greetings Canada Ltd. (collectively, the "Subordinated Creditor") entered into

that certain Subordination and Intercreditor Agreement (as amended from time to time prior to the Petition Date, the "Subordination Agreement") confirming the senior priority of the security interests of the Senior Agent in the Senior Prepetition Collateral to the junior priority security interests of the Subordinated Creditor in the Senior Prepetition Collateral, which junior priority security interests were granted by the Debtors to the Subordinated Creditor pursuant to the terms and conditions of the Junior Security Agreement.

11.    Under the Subordination Agreement, the Subordinated Creditor shall be deemed to have consented to the use of cash collateral within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral") by the Debtors upon notice of the Senior Agent's consent to such use of Cash Collateral. Prior to the Petition Date, the Debtors provided to the Subordinated Creditor the requisite notice of Senior Agent's consent to the Debtors' use of Cash Collateral as set forth herein and in the Interim Order. The Subordinated Creditor has consented to the use of Cash Collateral according to the terms of the Interim Order.

## THE DEBTORS' URGENT NEED TO USE CASH COLLATERAL

12.    As discussed in the First Day Declaration, the Debtors urgently need to use Cash Collateral to continue to operate their businesses, conduct the Liquidation and to fund the administration of these Chapter 11 Cases. As of the Petition Date, the Debtors had approximately $32,000.00 in cash on hand, all of which constitutes Cash Collateral of the Senior Agent. Moreover, all of the cash and other proceeds realized by the Debtors through execution of the Liquidation constitutes the collateral, including Cash Collateral, of the Senior Agent and Senior Lenders under the Senior Loan Documents. Absent the relief requested herein, the Debtors will not have sufficient liquidity to maintain their day-to-day operations, fund employee payroll and benefits obligations, pay vendors of necessary goods and services, and satisfy other

working capital and operational requirements during these Chapter 11 Cases.    All of the foregoing expenditures are necessary to preserve and maximize the value of the Debtors' estates. Thus, without immediate access to Cash Collateral, the Debtors would be required to cease operations resulting in a substantial loss of value to the detriment of all parties in interest.    Any delay in the Debtors' ability to access Cash Collateral would irreparably harm the Debtors and their estates.

<u>**SUMMARY OF TERMS OF THE INTERIM ORDER**</u>

13.    Pursuant to the disclosure requirements of Bankruptcy Rule 4001(b), the Debtors submit the following summary of certain material provisions of the Interim Order.[4]

| Material Term | Summary |
|---|---|
| **Cash Collateral to Be Used**<br><br>Interim Order ¶ 2 | The Interim Order authorizes the Debtors to use the Cash Collateral of the Senior Agent, with the Subordinated Creditor retaining a junior subordinated lien on the Cash Collateral, until the occurrence of the Termination Date (as defined below) in accordance with the Budget, subject to any Permitted Variance (as defined below)  and other terms of the Interim Order. |
| **Parties with Interest in Cash Collateral**<br><br>Interim Order ¶ E | Senior Agent, with the Subordinated Creditor retaining a junior, subordinated lien in the Cash Collateral. |
| **Budget and Reporting Provisions**<br><br>Interim Order ¶ 3 | **Budget.**    Debtors seek to use Cash Collateral during the Cash Collateral Period up to the Cash Collateral Limit only to pay the amount and type of expenses set forth in the Budget attached as <u>Exhibit 1</u> to the Interim Order during the periods covered by the Budget in which such expenses are projected to be paid, subject to the Permitted Variance (as defined below).<br><br>**Reporting.**  Not later than 3:00 p.m. (Eastern time) on the Tuesday of each week commencing on January 28, 2020, Debtors shall furnish to the Senior Agent and Subordinated Creditor a weekly report (the "Budget Compliance Report") that sets forth as of the preceding Saturday of each such week, on a weekly basis from the Petition Date (each such period referred to herein as a "Measurement Period"), the |

---

[4] This summary is qualified in its entirety by reference to the applicable provisions of the Interim Order. In the event of any conflict or inconsistency between this summary and the provisions of the Interim Order, the provisions of the Interim Order shall control.

| Material Term | Summary |
|---|---|
| | actual results for the following line items set forth in the Budget: (i) "Total Receipts"; (ii) "Total Operating Disbursements"; (iii) "Total Non-Operating Disbursements"; and (iv) "Professional Fees".<br><br>**Budget Variance.** The Debtors hereby covenant and agree that (i) the actual amount of "Total Receipts" for any Measurement Period shall not be less than ninety percent (90%) of the amount projected in the "Total Receipts" line item of the Budget for such Measurement Period; (ii) the actual amount of "Total Operating Disbursements" for any Measurement Period, shall not be more than one hundred and ten percent (110%) of the amount projected in the "Total Disbursements" line item of the Budget for such Measurement Period; (iii) the actual amount of "Total Non-Operating Disbursements" for any Measurement Period, shall not be more than one hundred and ten percent (110%) of the amount projected in the "Total Non-Operating Disbursements" line item of the Budget for such Measurement Period; (iv) the actual amount of "Ending Cash Balance" at any time during any Measurement Period shall not be less than ninety percent (90%) of the amount projected in the "Ending Cash Balance" line item of the Budget for such Measurement Period; and (v) the actual amount of "Professional Fees" for any Measurement Period, shall not be more than one hundred and five percent (110%) of the amount projected in the "Professional Fees" line item of the Budget for such Measurement Period; provided, that in all circumstances, savings in any one Measurement Period cannot be used in another Measurement Period (individually and collectively, the "Permitted Variance"). |
| **Adequate Protection and Priority**<br><br>Interim Order ¶ 6 | The Debtors propose to provide the following forms of adequate protection in favor of the Senior Agent for the benefit of itself and the Senior Lenders and the Subordinated Creditor:<br><br>**Senior Replacement Lien.** As adequate protection for the amount of diminution in value of its interests in the Collateral, including, without limitation, the aggregate amount of Cash Collateral used by any Debtor on a dollar for dollar basis, the imposition of the automatic stay and any other act or omission which causes diminution in the value of its interests in the Collateral (collectively, the "Diminution in Value"), and solely to the extent of any Diminution in Value, the Senior Agent, for the benefit of itself and the Senior Lenders, the Debtors propose to offer, pursuant to sections 361 and 363 of the Bankruptcy Code, valid, binding, enforceable and perfected replacement liens upon and security interests in all of each Debtors' presently owned or hereafter acquired property and assets, whether such property and assets were acquired by such Debtor before or after the Petition Date, of any kind or nature, whether real |

| Material Term | Summary |
|---|---|
| | or personal, tangible or intangible, wherever located, and the proceeds and products thereof, including, without limitation, the proceeds from any sale, termination, or other disposition of any leasehold interests of the Debtors and, subject only to the entry of a Final Order and all valid and existing encumbrances, all leasehold interests of the Debtors (collectively, to the extent acquired after the Petition Date, the "Senior Postpetition Collateral", and together with the Senior Prepetition Collateral and the Cash Collateral, collectively, the "Collateral") (the "Senior Replacement Lien"); *provided*, that, upon the entry of the Final Order, the Senior Replacement Lien will attach to property recovered as a result of transfers or obligations avoided or actions maintained or taken pursuant to Sections 542, 544, 545, 547, 548, 549, 550, 551, 552 and 553 of the Bankruptcy Code, *provided*, further, that the Senior Replacement Liens will attach to the proceeds of Debtors' leasehold interests and not to the leasehold interests themselves. The Senior Replacement Lien will not be made subject to or *pari passu* with any lien or with any lien or security interest previously or hereinafter granted in any of the Chapter 11 Cases or any Successor Case. The Senior Replacement Lien will be valid, binding and enforceable against any trustee or other estate representative appointed in any Chapter 11 Case, upon the conversion of any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code (collectively, "Successor Cases") and/or upon the dismissal of any Case or Successor Case.<br><br>**Subordinated Replacement Lien**. As adequate protection for the amount of diminution in value of its interests in the Subordinated Prepetition Collateral, including, without limitation, the aggregate amount of Cash Collateral used by any Debtor on a dollar for dollar basis, the imposition of the automatic stay and any other act or omission which causes diminution in the value of its interests in the Subordinated Prepetition Collateral (collectively, the "Subordinated Diminution in Value"), the Subordinated Creditor will be granted, pursuant to sections 361 and 363 of the Bankruptcy Code, valid, binding, enforceable and perfected replacement liens upon and security interests in all of the each Debtor's presently owned or hereafter acquired property and assets, whether such property and assets were acquired by such Debtor before or after the Petition Date, of any kind or nature, whether real or personal, tangible or intangible, wherever located, and the proceeds and products thereof, including, without limitation, the proceeds from any disposition of any leasehold interests of the Debtors and, subject only to the entry of a Final Order and all valid and existing encumbrances, all leasehold interests of the Debtors, solely to the extent of any Subordinated Diminution in Value (the "Subordinated Replacement Lien"). The |

| Material Term | Summary |
|---|---|
| | Subordinated Replacement Lien shall be junior and subordinate to (A) all liens of the Senior Agent on Collateral, including, without limitation, the Senior Replacement Lien and (B) the Carve-Out. Other than as set forth herein, the Subordinated Replacement Lien shall not be made subject to or *pari passu* with any lien or with any lien or security interest previously or hereinafter granted in any of the Cases or any Successor Case. The Subordinated Replacement Lien shall be valid, binding and enforceable against any trustee or other estate representative appointed in any Case or Successor Case and/or upon the dismissal of any Case or Successor Case. For the avoidance of doubt, the Subordinated Replacement Lien shall not include any leasehold interests of the Debtors until entry of a Final Order but shall include the proceeds from any disposition of any leasehold interests of the Debtors.<br><br>**Default Interest.** At all times during the Chapter 11 Cases, interest on all outstanding Senior Prepetition Obligations shall bear interest at the applicable Default Rate (as defined and set forth in the Senior Loan Agreement).<br><br>**Senior Adequate Protection Superpriority Claim.** As adequate protection for any Diminution in Value of its interest in the Collateral, the Debtors seek to offer the Senior Agent, for the benefit of itself and the Senior Lenders, as and to the extent provided by Sections 503 and 507(b) of the Bankruptcy Code, an allowed superpriority administrative expense claim in these Chapter 11 Cases and any successor bankruptcy case (the "<u>Senior Adequate Protection Superpriority Claim</u>"). The Senior Adequate Protection Superpriority Claim will be subordinate to the Carveout solely to the extent set forth in the Interim Order, but otherwise will have priority over all administrative expense claims, including administrative expenses of the kinds specified in or ordered pursuant to Sections 503(b) and 507(b) of the Bankruptcy Code, and unsecured claims against each Debtor and each Estate now existing or hereafter arising, of any kind or nature whatsoever.<br><br>**Mandatory Paydowns of Senior Obligations.** For so long as any Senior Prepetition Obligations remain outstanding and are not fully satisfied and Paid in Full on terms and conditions acceptable to Senior Agent, Debtors shall make weekly mandatory payments to Senior Agent, for the benefit of the Senior Agent and the other Senior Lenders, commencing on the date the Interim Order is entered, and on the [Monday] of each week thereafter, in the minimum amounts set forth in the Budget for permanent application against the Senior Prepetition Obligations in such order and manner as Senior Agent |

| Material Term | Summary |
|---|---|
|  | may determine in its discretion and in accordance with the terms of the Senior Loan Documents and the Subordination Agreement.<br><br>**Additional Payments from Sale of Collateral.** Notwithstanding anything to the contrary set forth herein, except for the provision of the Carveout, in the Budget, or in any other order entered in these Chapter 11 Cases, if the Senior Agent and other Senior Lenders have not received the indefeasible payment in full of all Senior Prepetition Obligations on or before March 27, 2020, then the Debtors shall pay to the Senior Agent, for itself and the benefit of the other Senior Lenders, all unpaid Senior Prepetition Obligations that are or which may become due and payable pursuant to the Senior Loan Documents on or after March 27, 2020 from the net sale proceeds generated from any sales, dispositions, or proceeds of casualty insurance of all Collateral outside the ordinary course of Debtors' businesses, including sales or dispositions of Collateral with respect to all "going out of business" sales and all other sales of Collateral pursuant to section 363 of the Bankruptcy Code until all Senior Prepetition Obligations are Paid in Full in accordance with the Senior Loan Documents and Subordination Agreement. All of the Senior Agent's and Senior Lenders' rights under the Senior Loan Documents with regard to the Senior Prepetition Obligations and otherwise are expressly reserved and, by the Interim Order, preserved.<br><br>**Letter of Credit.** Senior Agent will be authorized to (i) continue to maintain Cash Collateral in an amount equal to one hundred and five percent (105%) of all Letter of Credit Obligations (as defined in the Senior Loan Agreement); and (ii) apply such Cash Collateral, or any portion thereof, immediately upon any draw on any Letter of Credit (as defined in the Senior Loan Agreement).<br><br>**Cash Management.** Until Senior Agent receives Payment in Full (as defined below), (i) Senior Agent shall have, and continue to have, exclusive dominion and control on all deposit accounts and other accounts of Debtors, and all banks, depository entities, securities intermediaries and commodities intermediaries that are parties to any Control Agreements (as defined in the Senior Loan Agreement) shall be authorized and directed to continue affording Senior Agent with exclusive dominion and control over such accounts in accordance with the terms and conditions of the applicable Control Agreements, all of which agreements are hereby ratified and authorized in accordance with their respective terms; and (ii) prior to the Termination Date (as defined below), Senior Agent shall hold, and not apply to repay the Obligations except as otherwise set forth in the Interim Order, all Cash Collateral actually received by Senior Agent, |

| Material Term | Summary |
|---|---|
| | and shall remit such Cash Collateral so received to the Debtors on a weekly basis in accordance with the Budget and the Interim Order; provided, that on and after the Termination Date, Senior Agent shall be authorized to apply any and all Cash Collateral on hand or thereafter received by Senior Agent against the Senior Prepetition Obligations for permanent application against such debt without further notice to the Debtors or any other party. The term "Payment in Full" or "Paid in Full" means (I) all of the Senior Prepetition have been paid in full in cash; (II) in the case of any contingent or unliquidated Senior Prepetition Obligations, including, without limitation, any obligations that Debtors are required to furnish cash collateral to Senior Agent in accordance with the Senior Loan Documents, and any other liabilities arising from matters or circumstances known to Senior Agent and Senior Lenders at the time which are reasonably expected to result in any actual loss, cost, damage or expense (including attorneys' fees and legal expenses) to Senior Agent, the provision to Senior Agent of cash collateral in an amount determined by Senior Agent to fully secure and collateralize such contingent or unliquidated obligations and liabilities; and (III) that Senior Agent shall receive a release from each Debtor and the Committee of and from all demands, actions, causes of action, suits, covenants, contracts, controversies, agreements, promises, sums of money, accounts, bills, reckonings, damages and any and all other claims, counterclaims, defenses, rights of set-off, demands and liabilities in form and substance acceptable to Senior Agent.<br><br>**Consent/Administration Fee.** In consideration for the Senior Agent's consent to the use of its Cash Collateral in accordance with the terms of the Interim Order and continued maintenance of the Debtors' cash management system, Senior Agent shall be paid, in addition to all Senior Prepetition Obligations owing by Debtors to Senior Agent and Senior Lenders, a weekly fee in the amount of $25,000 until all Senior Prepetition Obligations have been Paid in Full (the "<u>Administration Fee</u>"). The Administration Fee shall be fully earned and payable on Monday of each week during the Cash Collateral Period. The Administration Fee shall be part of the Senior Prepetition Obligations owing to Senior Agent. Notwithstanding paragraph 6(d) of the Interim Order, Senior Agent is hereby authorized to apply any Cash Collateral that Senior Agent has on hand at any time to the permanent payment of the Administration Fee without further notice to the Debtors or any other party.<br><br>**Subsequent Actions.** Notwithstanding anything to the contrary set forth in the Interim Order, the adequate protection granted by the Interim Order is without prejudice to the Senior Agent's rights to |

| Material Term | Summary |
|---|---|
| | seek additional adequate protections from the Court. The use of Cash Collateral pursuant to the terms and conditions of the Interim Order and in accordance with the Budget shall not be deemed to be a consent by the Senior Agent to any other or further use of Cash Collateral or to the use of any Cash Collateral in any amount or for any purpose in excess of the amount set forth in the Budget for each such type of disbursement. |
| **Perfection of Senior Replacement Lien & Modification of the Automatic Stay**<br><br>Interim Order ¶ 9 | Neither the Senior Agent nor Subordinated Creditor will be required to file UCC financing statements or other instruments with any other filing authority to perfect the Liens, including the Senior Replacement Lien and Subordinated Replacement Lien, respectively, granted by the Interim Order or to take any other actions to perfect such Liens, which shall be deemed automatically perfected by the docketing of the Interim Order by the Clerk of the Court, and deemed to be effective as of the Petition Date. If, however, the Senior Agent or Subordinated Creditor elects for any reason to file, record or serve any such financing statements or other documents with respect to such Liens, then the Debtors will execute same upon request and the filing, recording or service thereof (as the case may be) shall be deemed to have been made at the time of the commencement of these Chapter 11 Cases on the Petition Date.<br><br>The Debtors seek, to the extent necessary, to vacate or modify the automatic stay provisions of Bankruptcy Code section 362 to (a) permit the Debtors to grant the Senior Replacement Lien and Subordinated Replacement Lien; (b) permit the Debtors implement and perform the terms of the Interim Order; and (c) permit the Senior Agent to (i) to implement the post-petition financing arrangements authorized by the Interim Order, (ii) to take any act to create, validate, evidence, attach or perfect any lien, security interest, right or claim in the Collateral, including any Senior Replacement Lien, (iii) immediately following the expiration of the Stay Relief Notice Period, to assess, charge, collect, advance, deduct and receive payments with respect to the Senior Prepetition Obligations, including, without limitation, all interests, fees, costs and expenses permitted under the Senior Loan Documents, and apply such payments to the Senior Prepetition Obligations, and (iv) immediately following the expiration of the Stay Relief Notice Period, to take any action and exercise all rights and remedies provided to it by the Interim Order, the Senior Loan Agreement, the other Senior Loan Documents, or applicable law. |
| **Debtors' Stipulations** | The Debtors, for themselves, their estates and all representatives of such estates, admit, stipulate, acknowledge and agree as follows: |

| Material Term | Summary |
|---|---|
| Interim Order ¶ E | (i) **Cash Collateral**. Any and all cash of the Debtors, including cash and other amounts on deposit or maintained in any bank account or accounts of the Debtors and any amounts generated by the collection of accounts receivable, the sale of inventory, or other disposition of the Collateral (as defined below) existing as of the Petition Date or arising or acquired after the Petition Date, together with all proceeds of any of the foregoing, is Cash Collateral of the Senior Agent, with the Subordinated Creditor retaining a junior, subordinated lien in the Cash Collateral. For the avoidance of doubt, Cash Collateral includes any proceeds from the sale of inventory or any Collateral (as defined below). Pursuant to section 363(c)(2) of the Bankruptcy Code, Debtors are not able to use Cash Collateral without the Senior Agent's consent or the Court's authorization after notice and a hearing.

(ii) **Senior Credit Facility**. Pursuant to the First Amended & Restated Loan and Security Agreement, dated April 17, 2009, by and among the Debtors, the Senior Agent and the Senior Lenders, the Senior Agent and Senior Lenders provided a revolving credit facility in the maximum principal amount of $35,000,000 to the Debtors. As of the Petition Date, the Debtors, without defense, counterclaim, or offset of any kind, were jointly and severally indebted and liable to the Senior Agent and Senior Lenders under the Senior Loan Documents in respect of the Senior Prepetition Obligations. Pursuant to the Senior Loan Agreement and other Senior Loan Documents, each Debtor granted the Senior Prepetition Liens in the Senior Prepetition Collateral to the Senior Agent for the benefit of itself and the Senior Lenders as security for the Obligations.

(iii) **Senior Prepetition Obligations**. The Senior Prepetition Obligations and the Senior Loan Documents constitute the legal, valid, binding and non-avoidable obligations and agreements of the Debtors, enforceable in accordance with their terms. The Senior Prepetition Obligations constitute allowed claims under section 502 of the Bankruptcy Code. The Senior Prepetition Obligations, the Senior Prepetition Liens and all payments made to the Senior Agent or applied to the Senior Prepetition Obligations owing under the Senior Loan Documents prior to the Petition Date, are not subject to avoidance, recharacterization, recovery, subordination, attack, offset, counterclaim, defense, or "claim" (as defined in the Bankruptcy Code) of any kind, nature or description pursuant to the Bankruptcy Code or other applicable law.

(iv) **No Claims Against Senior Agent, Senior Lenders, or** |

| Material Term | Summary |
|---|---|
| | **Subordinated Creditor**.  The Debtors hold no valid or enforceable "claims" (as defined in the Bankruptcy Code), counterclaims, causes of action, defenses, or setoff rights of any kind against the Senior Agent, the Senior Lenders, the Senior Prepetition Collateral and/or Subordinated Creditor.  Subject to paragraphs 17 and 20 of the Interim Order, as applicable, each Debtor hereby forever waives and releases any and all "claims" (as defined in the Bankruptcy Code), counterclaims, causes of action, defenses, or setoff rights against the Senior Agent, the Senior Lenders, and Subordinated Creditor, and each of their respective officers, directors, employees, agents, sub-agents, attorneys, consultants, advisors and affiliates and the Senior Prepetition Collateral, whether arising at law or in equity, under tort (including lender liability) or contract, including recharacterization, subordination, avoidance, or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state or federal law.<br><br>        (v)    **Senior Prepetition Liens**.    The Senior Prepetition Liens granted to the Senior Agent for the benefit of itself and the Senior Lenders in the Senior Prepetition Collateral pursuant to and in connection with the Senior Loan Documents, including, without limitation, all security agreements, pledge agreements, mortgages, deeds of trust, deposit account control agreements and other security documents executed by any of the Debtors in favor of the Senior Agent, (A) are valid, binding, perfected, enforceable and non-avoidable first-priority liens and security interests in the Debtors' assets, (B) are not subject, pursuant to the Bankruptcy Code or other applicable law, to avoidance, recharacterization, recovery, subordination, attack, offset, counterclaim, defense, or "claim" (as defined in the Bankruptcy Code) of any kind, (C) are subject and/or subordinate only to valid, perfected, and unavoidable senior priority liens and security interests existing as of the Petition Date securing valid, binding and unavoidable debt permitted under the Senior Loan Documents, and (D) constitute the legal, valid, and binding obligation of the Debtors, enforceable in accordance with the terms of the applicable Senior Loan Documents.<br><br>        (vi)    **Subordination Agreement**.    The Subordination Agreement is a "subordination agreement" within the meaning of Section 510(a) of the Bankruptcy Code.  The proposed Interim Order provides that nothing contained in the Interim Order shall in any way affect the validity, enforceability, priority, and non-avoidability of the Subordination Agreement, or any claim of the Senior Agent pursuant to the Subordination Agreement, or otherwise. |

| Material Term | Summary |
|---|---|
| | (vii) **Junior Security Agreement.** On June 25, 2019, the Debtors, SFP Canada and Subordinated Creditor entered into a Security Agreement (the "Junior Security Agreement") pursuant to which the Debtors and SFP Canada granted a security interest over their present and after-acquired property to secure the obligations owing under the Supply Agreement, the Trademark License Agreement, the POS Data Services Agreement, the Marketing Services Agreement, the American Greetings Guarantee, and any other documents, purchase orders, or other agreements between the Debtors and American Greetings, all subject to the Subordination Agreement. As of the Petition Date, the Debtors owe not less than $38,706,673.00 for amounts that have accrued under the AG Agreements (collectively, the "Prepetition Subordinated Obligations"). The Prepetition Subordinated Obligations constitute the legal, valid, binding and non-avoidable obligations and agreements of the Debtors, as applicable, enforceable in accordance with their terms. The Prepetition Subordinated Obligations owed to the Subordinated Creditor by Debtors constitute allowed claims under section 502 of the Bankruptcy Code. The Prepetition Subordinated Obligations and all payments made to Subordinated Creditor prior to the Petition Date, are not subject to avoidance, recharacterization, recovery, subordination, attack, offset, counterclaim, defense, or "claim" (as defined in the Bankruptcy Code) of any kind, nature or description pursuant to the Bankruptcy Code or other applicable law.<br><br>(viii) **Prepetition Subordinated Liens**. The Subordinated Prepetition Liens granted to and for the benefit of Subordinated Creditor in the Subordinated Prepetition Collateral pursuant to and in connection with the Junior Security Agreement, including, without limitation, all security agreements, pledge agreements, mortgages, deeds of trust, deposit account control agreements and other security documents executed by any of the Debtors in favor of Subordinated Creditor, (A) are valid, binding, perfected, enforceable and non-avoidable second-priority liens and security interests in the Debtors' assets, (B) are not subject, pursuant to the Bankruptcy Code or other applicable law, to avoidance, recharacterization, recovery, subordination, attack, offset, counterclaim, defense, or "claim" (as defined in the Bankruptcy Code) of any kind, (C) are subject and/or subordinate only to valid, perfected, and unavoidable senior priority liens and security interests under the Senior Loan Documents, and (D) constitute the legal, valid, and binding obligation of the Debtors, enforceable in accordance with the terms of the Junior Security Agreement, subject in all respects to the terms and conditions of the Subordination Agreement |

| Material Term | Summary |
|---|---|
| **Binding Effect of Debtors' Stipulations on Third Parties**<br><br>Interim Order ¶ 5 | Subject to Paragraphs 17(b) and 20 of the Interim Order, each stipulation, admission, and agreement contained in the Interim Order, including, without limitation, the Debtors' Stipulations, shall be binding upon the Debtors, their Estates and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors) under all circumstances and for all purposes, and the Debtors are deemed to have irrevocably waived and relinquished all Challenges (as defined herein) as of the date of the Petition Date.<br><br>Nothing in the Interim Order shall prejudice the rights of any Committee or any other party in interest, if granted standing by the Court, to seek, solely in accordance with the provisions of Paragraph 17 of the Interim Order, to assert claims against the Senior Agent, Senior Lenders or Subordinated Creditor, on behalf of the Debtors or the Debtors' creditors or to otherwise challenge the Debtors' Stipulations, including, but not limited to those in relation to (i) the validity, extent, priority, or perfection of the security interests, and liens of the Senior Agent, Senior Lenders and Subordinated Creditor, (ii) the validity, allowance, priority, or amount of the Senior Prepetition Obligations and Subordinated Prepetition Obligations, or (iii) any liability of the Senior Agent or Senior Lenders with respect to anything arising from the Senior Loan Documents, or the Subordinated Creditor with respect to the Junior Security Agreement and AG Agreements.  Notwithstanding the immediately preceding sentence, any Committee or any other party in interest must, after obtaining standing approved by the Court, commence a contested matter or adversary proceeding raising such claim, objection, or challenge, including, without limitation, any claim or cause of action against the Senior Agent, Senior Lenders, or Subordinated Creditor (each, a "<u>Challenge</u>") no later than (i) with respect to any Committee, the date that is sixty (60) days after the Committee's formation, (ii) if no Committee is appointed, then with respect to other parties in interest, no later than the date that is seventy-five (75) days after the entry of the Interim Order, or (iii) with respect to any chapter 11 trustee appointed in the Chapter 11 Cases, or any chapter 7 trustee appointed in any Successor Case, prior to the expiration of the periods set forth in subsections (i) and (ii) above, no later than the date that is the later of (A) fourteen (14) days after the appointment of such trustee or (B) the expiration of the time periods set forth in the foregoing subsections (i) and (ii) above (collectively, the "<u>Challenge Period</u>").  The Challenge Period may only be extended with the written consent of the Senior Agent, with respect to the Senior Prepetition Obligations, or the Subordinated Creditor with respect to |

| Material Term | Summary |
|---|---|
| | the Subordinated Prepetition Obligations and AG Agreements, prior to the expiration of the Challenge Period, and for the avoidance of doubt, any such extension shall only apply to the specific party as to whom such extension may be granted.  Only those parties in interest who commence a Challenge within the Challenge Period may prosecute such Challenge.  As to (x) any parties in interest, including any Committee, who fail to file a Challenge within the Challenge Period, or if any such Challenge is filed and overruled or otherwise finally resolved or adjudicated in favor of the Senior Agent and Senior Lenders, or (y) any and all matters that are not expressly the subject of a timely Challenge: (1) any and all such Challenges by any party (including, without limitation, any Committee, any chapter 11 trustee, any examiner or any other estate representative appointed in the Debtors' Chapter 11 Cases, or any chapter 7 trustee, any examiner or any other estate representative appointed in any Successor Case), shall be deemed to be forever waived and barred, (2) all of the findings, Debtors' Stipulations, waivers, releases, affirmations, and other stipulations as to the priority, extent, and validity as to the claims, liens, and interests of the Senior Agent and Senior Lenders, as applicable, shall be of full force and effect and forever binding upon the Debtors' bankruptcy estates and all creditors, interest holders, and other parties in interest in the Chapter 11 Cases and any Successor Cases, and (3) any and all claims or causes of action against (a) the Senior Agent and/or Senior Lenders, as applicable, relating in any way to the Senior Loan Documents, Senior Prepetition Obligations, or Senior Prepetition Liens, as applicable, and (b) the Subordinated Creditor with respect to the Subordinated Prepetition Obligations, AG Agreements, Junior Security Agreement, or Subordinated Prepetition Liens shall be released by the Debtors' estates, all creditors, interest holders, and other parties in interest in the Chapter 11 Cases and any Successor Cases.<br><br>Nothing in the Interim Order vests or confers on any person (as defined in the Bankruptcy Code), including any Committee, standing or authority to pursue any cause of action belonging to the Debtors or their Estates, including, without limitation, any Challenge with respect to the Senior Loan Documents, the Senior Prepetition Obligations, the AG Agreements or Junior Security Agreement, or the Subordinated Prepetition Obligations. |
| **Termination Event**<br><br>Interim Order ¶ 5 | Immediately upon written notice by the Senior Agent to the Debtors, the U.S. Trustee and, if appointed, any Committee, the Debtors' authorization, and the Senior Agent's consent for the Debtors, to use Cash Collateral pursuant to the Interim Order shall terminate on the earliest to occur of the following (the earliest such date, herein defined as the "Termination Date"):  (i) the failure of the Court to |

| Material Term | Summary |
|---|---|
| | enter a Final Order in form satisfactory to the Senior Agent on or before 4:00 p.m (Eastern time) on the day that is twenty-one (21) days after entry of the Interim Order; (ii) the entry of an order of the Court terminating the right of any Debtor to use Cash Collateral; (iii) the dismissal of any of the Chapter 11 Cases or the conversion of any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code; (iv) the appointment in any of the Chapter 11 Cases of a trustee or an examiner with expanded powers; (v) the entry of any order of the Court that avoids or disallows in any way the security interests, liens, priority claims or rights granted to the Senior Agent or the Subordinated Creditor (subject to the terms and conditions of the Subordination Agreement) under the terms of the Interim Order; (vi) the Interim Order shall cease, for any reason, to be in full force and effect, or the Debtors shall so assert in writing, or any liens or claims created in favor of the Senior Agent or Subordinated Creditor (subject to the terms and conditions of the Subordination Agreement) under the Interim Order shall cease to be enforceable and of the same effect and priority purported to be created hereby, or the Debtors shall so assert in writing; (vii) any of the Debtors challenge or object to the extent, validity, enforceability, priority, perfection and/or non-avoidability of the Senior Prepetition Obligations or the Senior Agent's security interests in and liens upon the Senior Prepetition Collateral or the Subordinated Creditor's security interests in and liens upon the Subordinated Prepetition Collateral (subject to the terms and conditions of the Subordination Agreement); (viii) an order of the Court shall be entered reversing, staying, vacating or otherwise modifying the Interim Order or any provision contained herein without the prior written consent of the Senior Agent; (ix) the actual amount of (i) "Total Receipts"; (ii) "Total Operating Disbursements"; (iii) "Total Non-Operating Disbursements" (in the case of (ii) and (iii), excluding, however, from such testing any amounts payable by the Debtors to the Consultant pursuant to the Consulting Agreement in respect of fees and reimbursable expenses); (iv) "Ending Cash Balance" and (v) "Professional Fees" in any Measurement Period deviates beyond the Permitted Variance as set forth in paragraph 3(c) from the amounts set forth in the Budget for such Measurement Period, without, in each instance, the prior written consent of the Senior Agent; (x) any Debtor fails to pay in full the Senior Prepetition Obligations in accordance with the terms set forth in the Interim Order, without the prior written consent of the Senior Agent; (xi) any material misrepresentation by any Debtor in the financial reporting or certifications to be provided by the Debtors to the Senior Agent under the Senior Loan Documents and/or the Interim Order; (xii) any of the Debtors propose or support any plan of reorganization or sale of all or substantially all of any Debtor's assets or entry of any order |

| Material Term | Summary |
|---|---|
| | confirming any such plan or sale that is not conditioned on the payment in full in cash, on the effective date of such plan or sale, of all Obligations (as defined in the Senior Loan Agreement) without the consent of the Senior Agent; (xiii) the Debtors fail to provide any additional adequate protection ordered by the Court and such failure shall continue unremedied for more than three (3) business days after written notice thereof; (xiv) the Debtors' failure to satisfy any Milestone (defined below) set forth in paragraph 26; (xv) the indefeasible payment in full of the Senior Prepetition Obligations; (xvi) without the prior written consent of the Senior Agent, the obtaining after the Petition Date of credit or the incurring of indebtedness that is (A) secured by a security interest, mortgage or other lien on all or any portion of the Senior Prepetition Collateral that is equal or senior to any security interest, mortgage or other lien of the Senior Agent, including, without limitation, any Senior Replacement Lien granted hereunder, or (B) entitled to priority administrative status which is equal or senior to that granted to the Senior Agent herein, including, without limitation, the Senior Adequate Protection Superpriority Claim; (xvii) without the prior written consent of the Senior Agent, the entry of an order by the Court granting relief from or modifying the automatic stay of section 362 of the Bankruptcy Code (A) to allow any creditor to execute upon or enforce a lien on or security interest in (1) any inventory or (2) in any other Senior Prepetition Collateral that is senior to any liens or security interests of the Senior Agent having a value greater than $100,000, or (B) the granting (whether voluntary or involuntary) of any lien on any Senior Prepetition Collateral to any state or local environmental or regulatory agency or authority that is senior to any liens or security interests of the Senior Agent; (xviii) the return by the Debtors of more than $50,000 of the Debtors' inventory pursuant to section 546(h) of the Bankruptcy Code without the prior written consent of the Senior Agent; (xxi) any Debtor's failure to perform, in any respect, any of its material obligations under the Interim Order; (xxii) the termination or resignation of Gordon Brothers Retail Partners, LLC without the prior written consent of the Senior Agent; and/or (xix) the termination, rescission and/or invalidation of the Store Closing Liquidation Agreement (as defined below) without the prior written consent of the Senior Agent (each of the forgoing, a "Termination Event"). |
| Carveout<br><br>Interim Order ¶ 4 | The "Carveout" is the sum of:<br><br>(i) All fees required to be paid to the Clerk of the Bankruptcy Court and any quarterly or other fees payable to the United States Trustee pursuant to, inter alia, 28 U.S.C. § 1930(a) and Section 3717 of title 31 of the United States Code; |

| Material Term | Summary |
|---|---|
|  | (ii) professional fees of, and costs and expenses incurred by, professionals or professional firms retained by the Debtors and the Committee (collectively, the "Case Professionals") and allowed by the Bankruptcy Court (whether such approval occurs prior to or after the occurrence of the Termination Declaration Date (defined below); "Allowed Professional Fees")) in an amount not to exceed the lesser of: (1) the actual Allowed Professional Fees incurred by each such Case Professional through the Termination Declaration Date, and (2) the amount reflected in the Budget for each such Case Professional, in each case, through the Termination Declaration Date (the lesser of (1) and (2) being the "Pre-Carveout Trigger Notice Cap");[5]<br><br>(iii) the allowed professional fees and costs and expenses incurred by Case Professionals incurred after the occurrence of the Termination Declaration Date in an aggregate amount not to exceed $200,000 ("Post-Carveout Trigger Notice Cap"); and<br><br>(iv) for the reasonable fees and expenses incurred by any Chapter 7 trustee appointed by the Court under section 726(b) of the Bankruptcy Code, not to exceed $25,000 in the aggregate.<br><br>The Carveout will not include any fees and expenses (x) incurred in connection with the investigation, assertion or joinder in any Challenge Proceeding or any other claim, counterclaim, action, proceeding, application, motion, objection, defenses or other contested matter, the purpose of which is to seek any order, judgment, determination or similar relief (A) invalidating, setting aside, avoiding, or subordinating, in whole or in part, (i) the Senior Prepetition Obligations, (ii) the Senior Prepetition Liens, or (iii) the adequate protection, or (B) preventing, hindering, or delaying, whether directly or indirectly, the Senior Agent's assertion or enforcement of the Senior Prepetition Liens and security interests, or its efforts to realize upon any Senior Prepetition Collateral and/or the adequate protection; provided, however, that such exclusion does not encompass any investigative work conducted by the Case Professionals retained by the Committee, but only up to $25,000.00 of the Carveout may be used for such investigative work. |

---

[5] For the avoidance of doubt, to the extent that a particular Case Professional is over-budget during any measurement period, it shall be entitled to offset such budget overage with any amounts such Case Professional is underbudget in prior or subsequent periods prior to the delivery of a Carveout Trigger Notice; and to the extent a particular Case Professional is under-budget during any measurement period, it shall be entitled to carry-over such budget excess with any amounts such Case Professional is over-budget in any subsequent periods prior to the delivery of a Carveout Trigger Notice.

| Material Term | Summary |
|---|---|
| **Lien Challenges**<br><br>Interim Order ¶ 17 | Any Committee or any other party in interest must, after obtaining standing approved by the Court, commence a contested matter or adversary proceeding raising such claim, objection, or challenge, including, without limitation, any claim or cause of action against the Senior Agent, Senior Lenders or Subordinated Creditor no later than (i) with respect to any Committee, the date that is sixty (60) days after the Committee's formation, (ii) if no Committee is appointed, then with respect to other parties in interest, no later than the date that is seventy-five (75) days after the entry of the Interim Order, or (iii) with respect to any chapter 11 trustee appointed in the Chapter 11 Cases, or any chapter 7 trustee appointed in any Successor Case, prior to the expiration of the periods set forth in subsections (i) and (ii) above, no later than the date that is the later of (A) fourteen (14) days after the appointment of such trustee or (B) the expiration of the time periods set forth in the foregoing subsections (i) and (ii) above.<br><br>The Challenge Period may only be extended with the written consent of the Senior Agent and/or Subordinated Creditor, as applicable, prior to the expiration of the Challenge Period, and for the avoidance of doubt, any such extension shall only apply to the specific party as to whom such extension may be granted.  Only those parties in interest who commence a Challenge within the Challenge Period may prosecute such Challenge.<br><br>As to (x) any parties in interest, including any Committee, who fail to file a Challenge within the Challenge Period, or if any such Challenge is filed and overruled or otherwise finally resolved or adjudicated in favor of the Senior Agent, Senior Lenders and Subordinated Creditor, or (y) any and all matters that are not expressly the subject of a timely Challenge: (1) any and all such Challenges by any party (including, without limitation, any Committee, any chapter 11 trustee, any examiner or any other estate representative appointed in the Debtors' Chapter 11 Cases, or any chapter 7 trustee, any examiner or any other estate representative appointed in any Successor Case), shall be deemed to be forever waived and barred, (2) all of the findings, Debtors' Stipulations, waivers, releases, affirmations, and other stipulations as to the priority, extent, and validity as to the claims, liens, and interests of the Senior Agent, Senior Lenders and Subordinated Creditor, as applicable, shall be of full force and effect and forever binding upon the Debtors' bankruptcy estates and all creditors, interest holders, and other parties in interest in the Chapter 11 Cases and any Successor Cases, and (3) any and all claims or causes of action against the Senior Agent, Senior Lenders and Subordinated Creditor, as applicable, relating in any way to the Senior Loan Documents, Senior Prepetition Obligations, Senior |

| Material Term | Summary |
|---|---|
| | Prepetition Liens, Subordinated Prepetition Obligations, AG Agreements or Junior Security Agreement, or Subordinated Prepetition Liens, as applicable, shall be released by the Debtors' estates, all creditors, interest holders, and other parties in interest in the Chapter 11 Cases and any Successor Cases.<br><br>Nothing in the Interim Order vests or confers on any person (as defined in the Bankruptcy Code), including any Committee, standing or authority to pursue any cause of action belonging to the Debtors or their Estates, including, without limitation, any Challenge with respect to the Senior Loan Documents, the Senior Prepetition Obligations, the AG Agreements or Junior Security Agreement, or the Subordinated Prepetition Obligations. |
| **Section 506(c) Waiver**<br><br>Interim Order ¶ 20 | Subject to entry of a Final Order granting such relief, no costs or expenses of administration which have or may be incurred in these Chapter 11 Cases will be charged against the Senior Agent, Senior Lenders or the Subordinated Creditor, their claims or the Collateral pursuant to section 506(c) of the Bankruptcy Code without the prior written consent of the Senior Agent or Subordinated Creditor, respectively, and no such consent will be implied from any other action, inaction or acquiescence by the Senior Agent or Subordinated Creditor, respectively. |
| **Waiver of "equities of the case" exception to section 552(b)**<br><br>Interim Order ¶ 13 | Subject to the entry of a Final Order granting such relief, the Senior Agent and Subordinated Creditor shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Senior Agent or Subordinated Creditor with respect to proceeds, products, offspring or profits of any of the Collateral, as applicable. |
| **Limited Trademark License**<br><br>Interim Order ¶ 19 | Without regard to any purported pre-petition termination of the Trademark Agreement (on which issue the Debtors and Subordinated Creditor reserve all rights), the Subordinated Creditor and its affiliates hereby extend to the Debtors and SFP Canada, Ltd. licenses (the "<u>Limited License</u>") on the same terms contained in the Trademark Agreement from the Petition Date through March 31, 2020 for the sole purpose of liquidating their assets in these Chapter 11 Cases. The Subordinated Creditor and its affiliates further agree that the Debtors and SFP Canada, Ltd. may use the Licensed Marks (as defined in the Trademark Agreement) in accordance with the same terms the of the Trademark Agreement for the sole purpose of conducting a liquidation of their assets in these Chapter 11 Cases. For the avoidance of doubt, (a) the Debtors and SFP Canada Ltd. |

| Material Term | Summary |
|---|---|
| | shall not be liable for any royalties, fees or other forms of renumeration or compensation for use of the Limited License; and (b) nothing in paragraph 19 of the Interim Order shall be, or is, deemed to affect any rights of the Senior Agent or Senior Lender under the Senior Loan Documents, the Interim Order or the Final Order. |
| **Reservation of Rights between Debtors and Subordinated Creditor**<br><br>Interim Order ¶ 20 | Except as expressly provided the Interim Order, the Debtors, on one hand, and the Subordinated Creditor and its affiliates on the other hand, mutually reserve all rights with respect to any claims, causes of action counterclaims and defenses whatsoever related to any matter not otherwise expressly addressed herein, including, but not limited to, the (a) AG Agreements; (b) Junior Security Agreement; (c) Subordinated Prepetition Obligations and Subordinated Prepetition Liens. For the avoidance of doubt, the Debtors do not dispute the current amount owing under the Subordinated Prepetition Obligations. |

### PROVISIONS TO BE HIGHLIGHTED UNDER LOCAL RULE 4001-2(a)(ii)

14.    Local Rule 4001-2 requires that all requests to use cash collateral under section 363 of the Bankruptcy Code shall (a) recite whether the proposed order contains specified provisions (collectively, the "Highlighted Provisions"), (b) identify the location of any such provisions in the proposed order and (c) justify the inclusion of such provision in the proposed order.    In compliance with Local Rule 4001-2, the following summarizes the applicable provisions of the Interim Order and provides a justification for the inclusion of such Highlighted Provisions therein.

### A.    Local Rule 4001-2(a)(i)(A)

15.    *Cross-Collateralization*.    Local Rule 4001-2(a)(i)(A) requires disclosure of provisions that grant cross-collateralization protection (other than replacement liens or other adequate protection) to the prepetition secured creditors (*i.e.*, clauses that secure prepetition debt by postpetition assets in which the secured creditor would not otherwise have a security interest by virtue of its prepetition security agreement or applicable law).    The Interim Order does not contain a cross-collateralization provision.

**B.**     **Local Rule 4001-2(a)(i)(B)**

16.    *Stipulation and Challenge Provisions*.    Local Rule 4001-2(a)(i)(B) requires

disclosure of provisions or findings of fact that bind the estates or other parties in interest to the

validity, perfection or amount of the secured creditor's prepetition lien or the waiver of claims

against the secured creditor without first giving parties in interest at least seventy-five (75) days

from the entry of the order and the creditors' committee, if formed, at least sixty (60) days from

the date of its formation to investigate such matters.  Paragraph E of the Interim Order binds the

Debtors' estates and all other parties in interest with respect to the amount of the Senior

Prepetition Obligations and Subordinated Prepetition Obligation and the validity, perfection and

enforceability of the Senior Prepetition Liens and Subordinated Prepetition Liens but, as set forth

in Paragraph 17 of the Interim Order, is subject to the rights of any party in interest with requisite

standing to commence a Challenge Proceeding by no later than the date that is the later of: (a)

with respect to any Creditors' Committee, sixty (60) days after the Committee's formation and

(b) with respect to other parties in interest with requisite standing (other than the Creditors'

Committee) seventy-five (75) days after the date of entry of the Interim Order.  Thus, any party

in interest will have adequate opportunity to investigate the transactions under the Senior Loan

Documents, Junior Security Agreement and AG Agreements and associated liens.

**C.**     **Local Rule 4001-2(a)(i)(C)**

17.    *Section 506(c) Waiver*.  Local Rule 4001-2(a)(i)(C) requires explicit disclosure of

provisions that seek to waive, without notice, whatever rights the estates may have under section

506(c) of the Bankruptcy Code.  Paragraph 23 of the Interim Order provides that, subject to entry

of the Final Order, no costs or expenses of administration which have or may be incurred in the

Chapter 11 Cases shall be charged against the Senior Agent, Senior Lenders, Subordinated

Creditor, their claims or the Collateral pursuant to section 506(c) of the Bankruptcy Code without the prior written consent of the Senior Agent and/or Subordinated Creditor, and no such consent shall be implied from any other action, inaction or acquiescence by the Senior Agent and/or Subordinated Creditor. The Debtors believe that this provision is justified under the facts and circumstances of these Chapter 11 Cases because, absent the relief requested, the Debtors will not be permitted to use Cash Collateral on a consensual basis.

### D.    Local Rule 4001-2(a)(i)(D)

18.    *Liens on Avoidance Actions*.  Local Rule 4001-2(a)(i)(D) requires disclosure of provisions that immediately grant to the prepetition secured creditor liens on the Debtors' claims and causes of action under sections 544, 545, 547, 548 and 549 of the Bankruptcy Code (the "Highlighted Avoidance Actions"). Paragraph 6 of the Interim Order provides that, upon entry of the Final Order, the Senior Replacement Lien and Subordinated Replacement Lien shall attach to property recovered as a result of transfers or obligations avoided or actions maintained or taken pursuant to Sections 542, 544, 545, 547, 548, 549, 550, 551, 552 and 553 of the Bankruptcy Code. The Debtors believe that this provision is justified under the facts and circumstances of these Chapter 11 Cases because, absent the relief requested, the Debtors will not be permitted to use Cash Collateral on a consensual basis.

### E.    Local Rule 4001-2(a)(i)(E)

19.    *Use of Postpetition Loans to Pay Prepetition Debt*.  Local Rule 4001-2(a)(i)(E) requires disclosure of provisions that use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt. The Interim Order does not deem prepetition secured debt to be postpetition debt.

**F.**    **Local Rule 4001-2(a)(i)(F)**

20.    *Carveout*.  Local Rule 4001-2(a)(i)(F) requires disclosure of provisions that provide disparate treatment for the professionals retained by a creditors' committee from those professionals retained by the Debtors with respect to a professional fee carve-out.  Paragraph 4 of the Interim Order provides for a Carveout for the fees and expenses of the Debtors' professionals and professionals retained by any statutory committee.

**G.**    **Local Rule 4001-2(a)(i)(G)**

21.    *Non-Consensual Priming Liens*.  Local Rule 4001-2(a)(i)(G) requires disclosure of provisions that prime any secured lien without the consent of that lienor. The Interim Order does not provide for non-consensual priming of any existing secured lien.

**H.**    **Local Rule 4001-2(a)(i)(H)**

22.    *Waiver of Section 552(b) "Equities of the Case" Exception*.  Local Rule 4001-2(a)(i)(H) requires disclosure of provisions that seek to affect the Court's power to consider the equities of the case under section 552(b)(1) of the Bankruptcy Code.  Paragraph 13 of the Interim Order provides that, upon entry of the Final Order, the Senior Agent and Subordinated Creditor shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Senior Agent and Subordinated Creditor with respect to proceeds, products, offspring or profits of any of the Collateral, as applicable.  The Debtors believe that this provision is justified under the facts and circumstances of these Chapter 11 Cases because, absent the relief requested, the Debtors will not be permitted to use Cash Collateral on a consensual basis.

## RELIEF REQUESTED

23.    By this Motion, the Debtors respectfully request that the Court enter the Interim

Order, substantially in the form attached hereto, and, after the Final Hearing, the Final Order,

granting, among other things, the following relief:

(a)    authorizing the Debtors to use Cash Collateral and all other Senior Prepetition Collateral in accordance with the Budget, subject to any Permitted Variance;

(b)    authorizing the Debtors to provide adequate protection to the Senior Lenders to the extent of any actual diminution in value of their interest in the Senior Prepetition Collateral, including Cash Collateral, in the form of the Senior Replacement Lien and the Senior Adequate Protection Superpriority Claim;

(c)    subject to certain challenge rights of certain parties in interest, approving certain stipulations by the Debtors with respect to the Senior Loan Documents and the liens and security interests arising therefrom;

(d)    modifying the automatic stay imposed under section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the relief requested herein;

(e)    waiving the Debtors' right to surcharge the Collateral pursuant to section 506(c) of the Bankruptcy Code and any "equities of the case" exception in section 552(b) of the Bankruptcy Code;

(f)    scheduling the Final Hearing, pursuant to Bankruptcy Rule 4001 and Local Rule 4001-2, to be held no later than twenty-one (21) days after entry of the Interim Order, to consider entry of the Final Order; and

(g)    granting certain related relief.

## BASIS FOR RELIEF REQUESTED

24.    A debtor's use of property of the estate, including cash collateral, is governed by

section 363 of the Bankruptcy Code, which provides, in pertinent part, as follows:

> If the business of the debtor is authorized to be operated under section ... 1108 ... of [the Bankruptcy Code] and unless the court orders otherwise, the [debtor] may ... use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. § 363(c)(1). A debtor may use cash collateral (a) with the consent of the secured party

or (b) without the consent of the secured party if the court, after notice and a hearing, authorizes

the debtor to use cash collateral in accordance with the provisions of section 363 of the Bankruptcy Code. *See* 11 U.S.C. § 363(c)(2).

25.    Section 363 of the Bankruptcy Code further provides that a debtor must "provide adequate protection" of the secured party's interest in the property against any diminution in value of such interest resulting from the debtor's use of the property. *See* 11 U.S.C. § 363(e). Notably, the Bankruptcy Code does not define "adequate protection." Instead, section 361 of the Bankruptcy Code provides a non-exhaustive list of examples of adequate protection, including cash payments, additional or replacement liens and other relief that will "result in the realization by such [secured party] of the indubitable equivalent of such entity's interest in such property." *See* 11 U.S.C. § 361; *see also Resolution Tr. Corp. v. Swedeland Dev. Grp., Inc. (In re Swedeland Dev. Grp., Inc.)*, 16 F.3d 552, 564 (3d Cir. 1994) ("The Code does not expressly define adequate protection, but section 361 states that it may be provided by (1) periodic cash payments; (2) additional or replacement liens; or (3) other relief resulting in the 'indubitable equivalent' of the secured creditor's interest in such property.").

26.    Thus, determining what constitutes adequate protection is necessarily a fact-specific inquiry. *See id.*, 16 F.3d at 564 ("[A] determination of whether there is adequate protection is made on a case by case basis") (citing *In re O'Connor*, 808, F.2d 1393, 1397 (10th Cir. 1987)). The focus of the adequate protection requirement is to preserve the secured party's position at the time of the bankruptcy filing and protect the secured party from diminution in the value of its collateral during the reorganization process. *Id.* ("The whole purpose of adequate protection for a creditor is to insure that the creditor receives the value for which he bargained prebankruptcy") (quoting *In re O'Connor*, 808 F.2d at 1396); *see also In re WorldCom, Inc.*, 304 B.R. 611, 618–19 (Bankr. S.D.N.Y. 2004) ("The legislative history for section 361 of the

Bankruptcy Code, which sets forth how adequate protection may be provided under section 363, makes clear that the purpose ... is to insure that the secured creditor receives the value for which the creditor bargained for prior to the debtor's bankruptcy."). "However, neither the legislative history nor the Bankruptcy Code require the Court to protect a creditor beyond what was bargained for by the parties." *Id.* at 619.

27.     Furthermore, the Bankruptcy Code mandates that a secured party be protected against diminution in the value of its interest in cash collateral only during the period of use. *See In re Cont'l Airlines, Inc.*, 146 B.R. 536, 539–40 (Bankr. D. Del. 1992) (noting that a secured party is only entitled to adequate protection to the extent the collateral declined in value); *In re Pursuit Athletic Footwear, Inc.*, 193 B.R. 713, 716 (Bankr. D. Del. 1996) (holding that if there is no diminution in the value of the secured party's collateral and the debtor can operate profitably postpetition, then the secured creditor is adequately protected against the use of cash collateral); *see also In re 495 Cent. Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) ("The goal of adequate protection is to safeguard the secured creditor from diminution in the value of its interest during the chapter 11 reorganization.").

28.     The Senior Agent and Senior Lenders, and the Subordinated Creditor (by agreement), have consented to the Debtors' use of Cash Collateral. As set forth above and in the First Day Declaration, however, the Debtors urgently need to use Cash Collateral to continue to fund the continued operation of their business. Failure to obtain authorization to use Cash Collateral would be fatal to the Debtors and disastrous for their creditors. The Debtors' inability to access Cash Collateral and operate their business would almost certainly lead to foreclosure on the Debtors' assets by the Senior Agent, Senior Lenders and Subordinated Creditor. Accordingly, to ensure their continued access to the Cash Collateral during these Chapter 11

Cases, the Debtors propose to provide the Senior Agent and Senior Lenders with adequate protection to the extent of any actual diminution in value of their interest in the Cash Collateral during the pendency of these Chapter 11 Cases.

29.    Specifically, the Debtors propose to provide the Senior Agent, for the benefit of itself and the Senior Lenders, with the following forms of adequate protection against the postpetition diminution in value of their interest in the Cash Collateral resulting from the Debtors' use of such property: (a) the Senior Replacement Lien, (b) post-petition interest on all outstanding obligations under Senior Prepetition Obligations at the contractual rate of default, (c) the Senior Adequate Protection Superpriority Claim, (d) mandatory paydown of Senior Prepetition Obligations, (e) additional payments from sale of Collateral, (f) continued Cash Collateral to back letters of credit and cash dominion pursuant to deposit account control agreements in place, (g) continuation of Senior Agent's exclusive dominion and control on all deposit accounts and other accounts of Debtors, (h) a section 552(b) equities of the case waiver (subject to a Final Order), (i) a section 506(c) waiver (subject to a Final Order), and (j) agreed milestones for the Chapter 11 Cases.  The Debtors propose to provide the Subordinated Creditor with the following forms of adequate protection against the postpetition diminution in value of its interest in the Cash Collateral resulting from the Debtors' use of such property: (a) the Subordinated Replacement Lien, (b) a section 552(b) equities of the case waiver (subject to a Final Order) and (c) a section 506(c) waiver (subject to a Final Order).

30.    Courts have held that granting replacement liens on assets generated by the debtors postpetition is an appropriate form of adequate protection. *See Swedeland Dev. Grp.*, 16 F.3d at 564, 566; *In re Conf. of African Union First Colored Methodist Protestant Church*, 184 B.R. 207, 209 n.9 (Bankr. D. Del. 1995) ("[P]ursuant to Code § 361, 'adequate protection' to a

secured creditor may be provided in the form of an additional or replacement lien."); *see also In re Int'l Design & Display Grp., Inc.*, 154 B.R. 362, 364 (Bankr. S.D. Fla. 1993) (same); *In re Karl A. Neise, Inc.*, 16 B.R. 602, 603 (Bankr. S.D. Fla. 1981) (same). Thus, the Debtors' proposal to provide the Senior Lenders with replacement liens and superpriority administrative expense claims adequately protects the Senior Agent and supports the Debtors' use of Cash Collateral. Likewise, the grant of subordinated replacement liens to the Subordinated Creditor adequately protects the Subordinated Creditor and supports the use of the Debtors' use of Cash Collateral.

31.    Considered in the context of the Debtors' current and projected cash position the proposed adequate protection is the minimum protection acceptable to the Senior Agent and Subordinated Creditor to secure their consent to Debtors' use of Cash Collateral in the amount and in the manner set forth in the Budget. Thus, under the circumstances of these Chapter 11 Cases, the Debtors submit that the adequate protection provided in the Interim Order is fair and reasonable under the circumstances, satisfies the requirements of sections 363(c)(2) and 363(e) of the Bankruptcy Code, and is in the best interests of the Debtors, their estates, and all parties in interest.

32.    Moreover, courts in this district have approved similar adequate protection packages in recent chapter 11 cases. *See, e.g., In re Destination Maternity Corporation*, No. 19-12256 (BLS) (Bankr. D. Del. Nov. 22, 2019); *In re UCI Int'l, LLC*, No. 16-11354 (MFW) (Bankr. D. Del. June 3, 2016); *In re Offshore Grp. Inv. Ltd.*, No. 15- 12422 (BLS) (Bankr. D. Del. Jan. 8, 2016); *In re Samson Res. Corp.*, No. 15- 11934 (CSS) (Bankr. D. Del. Sept. 25, 2015); *In re Quicksilver Res. Inc.*, No. 15-10585 (LSS) (Bankr. D. Del. May 1, 2015); *In re Entegra Power Grp. LLC*, No. 14-11859 (PJW) (Bankr. D. Del. Sept. 3, 2014); *In re Energy*

*Future Holdings Corp.*, No. 14-10979 (CSS) (Bankr. D. Del. June 6, 2014). Similar authorization is appropriate in these Chapter 11 Cases.

## REQUEST FOR MODIFICATION OF THE AUTOMATIC STAY

33.     The proposed Interim Order provides that the automatic stay provisions of section 362 of the Bankruptcy Code will be modified to the extent necessary to (a) implement the terms and conditions of the Interim Order and the transactions contemplated thereby and (b) permit the Debtors to create and the Senior Agent to perfect the Senior Replacement Lien and other Liens granted under the Interim Order.

34.     The relief requested herein contemplates modifying the automatic stay to permit the Debtors to grant the security interests and liens described above to the Senior Lenders and to perform such acts as may be requested to assure the perfection and priority of such security interests and liens.  The Debtors have determined, in an exercise of their business judgment, that such stay modification is appropriate under the circumstances, in the context of the negotiated, consensual Cash Collateral Orders.  Further, stay modifications of this kind are ordinary and are reasonable and fair under the circumstances of these Chapter 11 Cases.

## REQUEST FOR INTERIM RELIEF

35.     Bankruptcy Rule 4001(b) provides that the Court may commence a final hearing on a motion to use cash collateral no earlier than 14 days after service of the motion. Fed. R. Bankr. P. 4001(b).  If the motion so requests, however, the Court may conduct a preliminary hearing before such 14-day period expires, and the Court may authorize the use of cash collateral only to the extent necessary to avoid immediate and irreparable harm to the debtors' estates pending a final hearing. *Id.*

36.    The Debtors have an immediate postpetition need to use Cash Collateral to continue operations, preserve and maximize value, and administer these Chapter 11 Cases. The Debtors require immediate access to liquidity to satisfy their day-to-day operations. This access will allow the Debtors to continue their business in the ordinary course, maintain relationships with their vendors and landlords, make payroll, and satisfy other essential working capital and operational needs, all while conducting the Liquidation. Access to Cash Collateral will preserve the value of the Debtors' estates for the benefit of all stakeholders.

37.    In addition, the Debtors have an immediate need for access to liquidity to, among other things, execute the strategies underlying the Liquidation, which are key to preserving and maximizing value of the Debtors' estates. The Debtors will be unable to proceed with their proposed Liquidation if they are not able to access the liquidity needed even though the Senior Agent, Senior Lenders and Subordinated Creditor have provided their consent. Substantially all of the Debtors' available cash constitutes the Senior Agent and Senior Lenders' "cash collateral," as such term is used in section 363(c) of the Bankruptcy Code. All of the Senior Lenders consent to the Debtors' use of Cash Collateral in accordance with the proposed Interim Order. Such parties have coalesced around the Debtors' proposed path. The Debtors will suffer immediate and irreparable harm to the detriment of all creditors if they are not granted access to use Cash Collateral on an interim basis.

### REQUEST FOR WAIVER OF BANKRUPTCY RULE 4001(a)(3)

38.    The Debtors request a waiver of the stay of the effectiveness of the order approving this Motion under Bankruptcy Rule 4001(a)(3). Bankruptcy Rule 4001(a)(3) provides, "[an] order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of fourteen days after entry of the order,

unless the court orders otherwise." Fed. R. Bankr. P. 4001(a)(3). The use of Cash Collateral is essential to prevent irreparable damage to the Debtors' estates. Accordingly, ample cause exists to justify the waiver of the fourteen-day stay imposed by Bankruptcy Rule 4001(a)(3), to the extent such stay applies.

## BANKRUPTCY RULE 6003 HAS BEEN SATISFIED

39.    Bankruptcy Rule 6003 empowers the Court to issue an order, within twenty-one (21) days after the Petition Date, granting a motion to "use . . . property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" if such requested relief "is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003(b).  For the reasons discussed above, entry of the Interim Order is integral to the Debtors' ability to successfully transition into chapter 11. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

## WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h) REQUIREMENTS

40.    In addition, by this Motion, the Debtors seek a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As set forth above, the Debtors require immediate relief to continue ordinary business operations for the benefit of all parties in interest. Accordingly, the Debtors submit that ample cause exists to justify a waiver of the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

41.    Similarly, for the reasons stated above, the Debtors respectfully request a waiver of the notice requirements of Bankruptcy Rule 6004(a) to the extent they are deemed applicable.

## **REQUEST TO SCHEDULE A FINAL HEARING**

42.    Pursuant to Bankruptcy Rule 4001(b)(2), the Debtors request that the Court set a date for the Final Hearing that is as soon as practicable, but in no event later than twenty-one (21) days after entry of the Interim Order, and fix the deadline for parties to object to the Motion. The Debtors will serve a copy of the signed Interim Order, which fixes the deadline for parties to object to the Motion, on each of the parties listed below.

## **RESERVATION OF RIGHTS**

43.    Except as otherwise noted herein and as provided in the proposed form of Interim Order, nothing contained in this Motion or any actions taken by the Debtors pursuant to any order granting the relief requested by this Motion is intended or should be construed as:  (a) an admission as to the validity, priority, or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtors' right to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors or any other party-in-interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid and the Debtors and all other parties-in-interest expressly reserve their rights to contest the extent, validity, or perfection, or to seek avoidance of all such liens.  Except as otherwise noted herein and as provided in the proposed form of Interim Order,

if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party-in-interest's rights to subsequently dispute such claim.

## NOTICE AND NO PRIOR REQUEST

44.     Notice of this Motion will be provided to the following, or their counsel, if known: (a) the Office of the United States Trustee for the District of Delaware; (b) each of the Debtors' creditors holding the thirty (30) largest unsecured claims (on a consolidated basis); (c) the Senior Agent and Senior Lenders; (d) the Subordinated Creditor; (e) the Internal Revenue Service; (f) the United States Attorney's Office for the District of Delaware; (g) the Attorney General for the State of Delaware; (h) all parties asserting a Lien on the Senior Prepetition Collateral; and (i) all parties who have requested notice pursuant to Bankruptcy Rule 2002. Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

45.     The Debtors have not previously sought the relief requested herein from this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court (a) enter the Interim

Order, substantially in the form attached hereto, (b) following the Final Hearing, enter the Final

Order, and (c) grant such other and further relief as is just and proper.

Dated: January 23, 2020                 **LANDIS RATH & COBB LLP**
      Wilmington, Delaware

Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
Nicolas E. Jenner (No. 6554)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email: landis@lrclaw.com
       mcguire@lrclaw.com
       jenner@lrclaw.com

*Proposed Counsel to the Debtors*
*and Debtors-In-Possession*