# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>SFP FRANCHISE CORPORATION, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-10134 (JTD)<br><br>(Jointly Administered)<br><br>Hearing Date: February 27, 2020 at 11:00 a.m. (ET)<br><br>Ref No. 144 |

**DECLARATION OF JENICA MYSZKOWSKI IN SUPPORT OF
DEBTORS' MOTION FOR AN ORDER (A) APPROVING THE SALE OF CERTAIN
OF THE DEBTORS' NONRESIDENTIAL REAL PROPERTY LEASES AND
FURNITURE, FIXTURES AND EQUIPMENT FREE AND CLEAR OF LIENS,
CLAIMS, ENCUMBRANCES AND OTHER INTERESTS, (B) APPROVING
ASSUMPTION AND ASSIGNMENT OF LEASES AND
(C) GRANTING CERTAIN RELATED RELIEF**

I, Jenica Myszkowski, hereby declare under penalty of perjury, pursuant to section 1746 of title 28 of the United States Code, as follows:

1. I am the Chief Operating Officer of Paper Source Inc. (the "**Proposed Buyer**"), which has a place of business at 125 S Clark St. 15th Floor, Chicago, IL 60603. I am duly authorized to make this declaration (this "**Declaration**") on behalf of the Proposed Buyer in support of the *Debtors' Motion for an Order (A) Approving the Sale of Certain of the Debtors' Nonresidential Real Property Leases and Furniture, Fixtures and Equipment Free and Clear of Liens, Claims, Encumbrances and Other Interests, (B) Approving Assumption and Assignment of Leases and (C) Granting Certain Related Relief* [D.I. 144] (the "**Motion**").[2]

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: SFP Franchise Corporation (6248); and Schurman Fine Papers (1409). The location of the Debtors' principal place of business is 300 Oak Bluff Lane, Goodlettsville, Tennessee 37072.

[2] Capitalized terms used but not defined herein shall have the meanings given them in the Motion.

1

2. I am familiar with the Proposed Buyer's financial statements and records, business affairs, operations and capital structure. As Chief Operating Officer, the scope of my duties includes having responsibility for the Proposed Buyer's proposed acquisition of non-residential real property leases and related assets from third parties, including the Debtors.

3. Except as otherwise indicated, all the facts set forth in this Declaration are based upon my personal knowledge, my discussions with other representatives of the Proposed Buyer and other interested parties, and my review of relevant information concerning the Proposed Buyer's operations and financial affairs, or upon my opinions based on my experience and knowledge. If called as a witness, I could and would testify competently to the facts set forth in this Declaration. I am authorized to submit this Declaration on behalf of the Proposed Buyer.

4. Prior to the Petition Date, the Proposed Buyer submitted a non-binding letter of intent to purchase the Acquired Assets from the Debtors through a sale process in these chapter 11 cases. The Proposed Buyer and the Debtors conducted numerous rounds of negotiations related to the Acquired Assets, and ultimately executed the Agreement on February 6, 2020. I was personally involved in the negotiations with the Debtors and have been personally involved in ongoing negotiations related to the Leases with the Debtors, lease counterparties (the "**Landlords**"), and other interested parties.

5. The Proposed Buyer's bid is a good faith offer that it intends to consummate, subject to the terms and conditions of the Agreement. At all times during the parties' negotiations and communications, they acted in good faith. The Proposed Buyer never engaged in any collusion with respect to the submission of its bid. The Proposed Buyer's negotiations with the Debtors and their representatives and advisors were at arms' length at all times. The Proposed Buyer was aware that, pursuant to the terms of the Agreement, its bid was subject to higher and better offers and the

exercise of the Debtors' fiduciary duties. The Proposed Buyer has not engaged in any negotiations with other bidders and does not have any sort of understanding or agreement with other interested parties for the assets acquired by the Proposed buyer. I believe I would be aware of any such understanding or agreement that might exist in my capacity as Chief Operating Officer of the Proposed Buyer.

6. The Proposed Buyer is not an "insider" or "affiliate" (as I understand such terms to be defined under the Bankruptcy Code) of any of the Debtors, and no common identity of incorporators, directors or controlling stockholders exists between the Proposed Buyer and the Debtors. Furthermore, the Proposed Buyer has not exerted control or undue influence over the Debtors.

7. In addition, the Proposed Buyer is ready and able to close and to perform its obligations under the terms and conditions of the Agreement.

8. As contemplated by the Agreement and unless waived by a Landlord, the Proposed Buyer will pay all cure costs at closing in the amounts reflected on the revised cure schedule filed with the Court contemporaneously herewith. The Proposed Buyer has more than sufficient cash resources to satisfy all such cure obligations.

9. On February 12, 2020, the Proposed Buyer submitted adequate assurance information on a confidential basis to the Debtors, the Committee and all Landlords, as reflected in the notice filed with the Court [D.I. 180] and corresponding affidavit of service [D.I. 224]. This information contained the Proposed Buyer's latest balance sheet, which clearly demonstrated its post-closing solvency and liquidity. Additional details, including background information on and projected financials for the Proposed Buyer, were also provided on a confidential basis upon the request of certain Landlords.

10. Following remodeling, the Proposed Buyer will be putting a "Paper Source" store into each of the leased premises. No significant changes in the store operations are planned. It is anticipated that the financial condition and operating performance of the Proposed Buyer under the Leases will be similar, if not better, than the Debtors. The Proposed Buyer will have the financial ability and willingness to perform under the Leases that are being assumed by the Debtors and assigned to them in connection with this purchase.

11. The Proposed Buyer has extensive experience in the same industry in which the Debtors specialize, thereby allowing for a seamless transition into the leased premises. The Proposed Buyer is a stationery and gift retailer that offers papers, custom invitations and announcements, gifts, greeting cards, gift wrap, paper craft kits, party supplies, and personalized stationery and stamps. Founded in 1983, the Proposed Buyer now has 135 stores in 30 states, ranging from 500 square feet to 4,000 square feet in size, with rent ranging as high as $65,000 per month. The Proposed Buyer is owned by Investcorp, a global, publicly traded private equity firm.

12. In addition, the Proposed Buyer: has a talented and experienced management team; has not been the subject of any bankruptcy or insolvency proceeding; has paid (and will continue to pay) its debts as they come due in the ordinary course of business; has performed (and will continue to perform) under its existing leases; and, as evidenced by the Purchase Price, is willing and able to dedicate significant capital in order to purchase the Debtors' assets, including the Leases. Accordingly, based on the foregoing and a review of the Proposed Buyer's financial condition and anticipated revenues and expenses post-closing, I believe that the Proposed Buyer has the financial wherewithal, experience and willingness to perform under the Leases that are assumed by the Debtors and assigned to them in connection with the sale.

13. I have been informed by counsel that there are certain requirements under section

365(b)(3) of the Bankruptcy Code that apply to the provision of adequate assurance of future performance regarding a lease of real property if the property at issue is located in a shopping center. To the extent that any store the Proposed Buyer seeks to acquire is determined to be located in a shopping center, the Proposed Buyer intends to comply with those requirements, to the extent applicable. As stated above, I believe that the Proposed Buyer's financial condition and operating performance under the leases will be similar to (if not stronger than) that of the Debtors. In addition, I have no reason to believe that there would be a substantial decline in percentage of rents, if any, with respect to such Lease following the assignment of such Lease. Moreover, subject to the terms and conditions of the Agreement and this Court's approval order, the Proposed Buyer will be taking such Lease subject to all provisions thereof, including, but not limited to, any provisions regarding radius, locations, use or exclusivity, and does not intend to breach any such provisions contained in any other lease, financing agreement or master agreement relating to any shopping center. Finally, I have no reason to believe that the assumption and assignment of such Leases will disrupt any tenant mix or balance in any such shopping center. Accordingly, I believe that the Proposed Buyer has satisfied its obligations in connection with section 365(b)(3) of the Bankruptcy Code.

14. I believe that it is essential that certain provisions in the Leases or local law, which would have the effect of limiting or prohibiting the assumption and assignment of the Leases to the Proposed Buyer, be deemed unenforceable in connection with the proposed transaction. Enforcing the Bankruptcy Code to render such provisions unenforceable is essential to facilitate the assignment of the Leases and permit the Proposed Buyer to perform alterations and remodeling, replace or modify existing signage, or otherwise convert the space for use in connection with its retail operations at the premises, and that permitting the Proposed Buyer to "go dark" for a period

of up to four months is reasonable in light of the anticipated work to be conducted at the premises.

      15.      Based on the foregoing, I believe that: (a) the Proposed Buyer has acted in good faith (as I understand that term to be defined under section 363(m) of the Bankruptcy Code); (b) the Proposed Buyer has not colluded with other bidders or otherwise controlled or interfered with the Debtors' sale process; (c) all cure amounts will be timely paid as required under the Agreement and section 365(b)(1)(A) of the Bankruptcy Code; (d) the Proposed Buyer has demonstrated adequate assurance of future performance under the Leases as required under sections 365(b)(1)(C), 365(b)(3), and 365(f)(2)(B) of the Bankruptcy Code; and (d) the terms of the Agreement are reasonable and appropriate.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: February 25, 2020
       Chicago, Illinois

                                              Jenica Myszkowski
                                              Chief Operating Officer