THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SFP FRANCHISE CORPORATION, *et al.*,[1] | Case No. 20-10134 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: T.B.D.**<br>**Objection Deadline: April 23, 2020 at 4:00 p.m. (ET)** |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER, PURSUANT TO
SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE, (I) AUTHORIZING
THE SALE OF CERTAIN LITIGATION CLAIMS IN THE VISA/MASTERCARD
INTERCHANGE FEE LITIGATION FREE AND CLEAR OF LIENS,
CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS,
AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") in these jointly-administered chapter 11 cases hereby submit this motion (this "Motion") for the entry of an order, substantially in the form attached hereto as **Exhibit A**, pursuant to sections 105(a) and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), and Rules 2002, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) authorizing the sale (the "Sale") of claims in the Visa/MasterCard Interchange Fee Litigation (the "Claims"), on an "as is, where is" basis, free and clear of all liens, claims, encumbrances, and interests, to Jefferies Leveraged Credit Products LLC ("Jeffries," or the "Stalking Horse Bidder") or the another entity that submits the highest or otherwise best offer for the Claims (the "Highest Bidder") as determined by the Debtors in their business judgment pursuant to the solicitation and auction process described below (the "Proposed Purchaser"), and

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: SFP Franchise Corporation (6248); and Schurman Fine Papers (1409). The location of the Debtors' principal place of business is 300 Oak Bluff Lane, Goodlettsville, Tennessee 37072.

{1270.002-W0061003.2}

(ii) granting related relief. In support of this Motion, the Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1.  The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.[2]

2.  Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3.  The statutory and legal predicates for the relief requested herein are Bankruptcy Code sections 105(a) and 363, along with Bankruptcy Rules 2002, 6004, and 9014.

## BACKGROUND

**I.    General**

4.  On January 23, 2020 (the "Petition Date"), the Debtors commenced the above-captioned chapter 11 cases (the "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the Court.

5.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession, pursuant to Bankruptcy Code sections 1107(a) and 1108.[3] As of the date

---

[2] Pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors hereby confirm their consent to entry of a final order by this Court in connection with this Motion if it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

[3] A detailed description of the Debtors and their business, and the facts and circumstances supporting the Debtors' Chapter 11 Cases are set forth in greater detail in the *Declaration of Craig M. Boucher in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration"), filed contemporaneously with the Debtors' voluntary petitions for relief. Capitalized terms used but not otherwise defined in this motion shall have the meanings ascribed thereto in the First Day Declaration.

hereof, no trustee or examiner has been appointed in these Chapter 11 Cases.

6. On February 4, 2020, the Office of the United States Trustee (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors in the Chapter 11 Cases (the "Committee") [D.I. 116].

7. Additional information regarding the circumstances leading to the commencement of these Chapter 11 Cases and information regarding the Debtors' businesses and capital structure is set forth in detail in the First Day Declaration.

8. The Debtors determined that the best way to maximize value for the benefit of all interested parties was a prompt and orderly wind-down of their businesses through the implementation of store closing sales (collectively, the "Store Closing Sales") and related liquidation initiatives. As more fully discussed in the First Day Declaration, the conclusion to liquidate was reached following a lengthy process in which the Debtors considered and explored all reasonable strategic alternatives.

9. On the Petition Date, the Debtors filed the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Assume the Consulting Agreement, (II) Approving Procedures for Store Closing Sales, (III) Approving the Implementation of Customary Store Bonus Program and Payments to Non-Insiders Thereunder, and (IV) Granting Related Relief* [D.I. 21] (the "Store Closure Motion") seeking, among other things, authority to continue store closing or similar themed sales at all of their stores (the "Store Closing Sales"). The Court approved the Store Closing Sales on a final basis on February 14, 2020 [D.I. 202].

10. On January 31, 2020, the Debtors filed the *Debtors' Motion Seeking Entry of an Order (I) Authorizing and Approving Procedures to Reject Executory Contracts and Unexpired Leases, (II) Authorizing the Removal or Abandonment of Personal Property Remaining at a*

*Rejected Location and (III) Granting Related Relief* [D.I. 93] (the "Rejection Procedures Motion") to establish procedures for the orderly and timely rejection of real property leases (the "Rejection Procedures"). After the hearing on February 14, 2020, the Court approved [D.I. 205] the Rejection Procedures.

11. On February 6, 2020, the Debtors filed the *Debtors' Motion for an Order (A) Approving the Sale of Certain of the Debtors' Nonresidential Real Property Leases and Furniture, Fixtures and Equipment Free and Clear of Liens, Claims, Encumbrances and Other Interests, (B) Approving Assumption and Assignment of Leases and (C) Granting Certain Related Relief* [D.I. 144] (the "Lease Sale Motion") to approve the sale and assumption and assignment of certain of the Debtors nonresidential leases and furniture, fixtures and equipment associated with their retail store locations (the "Lease and FFE Sale"). After the hearing on February 27, 2020, the Court approved [D.I. 261] the Lease and FFE Sale. The Lease and FFE Sale closed on February 28, 2020. In connection with the Store Closing Sales and the Lease and FFE Sale, the Debtors vacated all of their remaining stores on or before February 29, 2020 and rejected the remaining Leases.

**II.    The Sale of Claims**

12. In connection with their retail operations, the Debtors accepted payments via Visa and Mastercard credit cards. A class action lawsuit, *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, No. 05-MD-1720 (MKB) (JO), is pending against Visa and Mastercard for alleged antitrust violations occurring between January 1, 2004 to January 25, 2019 (the "Suit"). It is anticipated that the Claims will result in a payment to the Debtors once the case is finally resolved.

13. Since the Petition Date, the Debtors and their professionals have been contacted by several parties interested in buying the Claims in the Suit. After non-disclosure agreements were

signed by the interested parties, the Debtors shared confidential information regarding their Claims. Ultimately, three parties submitted offers to purchase the Claims. Jefferies made the highest offer and has agreed to purchase the Claims for a cash bid of $120,500.00. The Debtors and Jeffries conducted numerous rounds of negotiations related to the Claims, ultimately executing an Asset Purchase Agreement (the "Agreement") as of April 1, 2020. The Debtors believe, in the exercise of their business judgment, that the potential sale of the Claims to Jeffries would provide a substantial benefit to all of their creditor constituencies and stakeholders, and believe that such sale may provide the best possible outcome, however the Debtors have determined that in order to maximize the value of the Claims, Jeffries should be considered the Stalking Horse Bidder but have no bid protections. Instead, the terms of the Agreement leave the Debtors open to accept bids for better and higher offers, and potentially conduct an auction (the "Sale Process"), to maximize the value of the Claims.

14. The following chart summarizes key provisions and aspects of the proposed Agreement by and among the Debtors and Jeffries, as well as any provisions required to be highlighted pursuant to Local Rule 6004-1(b)(iv), but is qualified in its entirety by reference to the actual Agreement attached hereto as **Exhibit B**.[4]

| | |
|---|---|
| **Sellers** | Schurman Fine Papers |
| **Buyer** | Jefferies Leveraged Credit Products LLC |
| **Purchase Price** (Section 2) | In consideration of the sale of the Claims, the Purchase Price is cash in the amount of $120,500. |

---

[4] This description of the Agreement is intended as a summary only. To the extent that there is any discrepancy between this summary and the Agreement, the terms of the Agreement shall govern.

| | |
|---|---|
| **Acquired Assets**<br><br>**(Section 1)** | The Assigned Claims—all of Seller's claims, interests and causes of action arising from or related to the involvement of Seller, as a plaintiff, member of a class, or otherwise a claimant, in in any of the actions and proceedings consolidated in the multi-district litigation that is currently pending in the United States District Court for the Eastern District of New York, MDL No. 1720 and Civil No. 05-5075 (the "Class Action") against Visa Inc. ("Visa") and MasterCard Inc. ("Mastercard") in the Visa/MasterCard Interchange Fee Litigation. |
| **Sale to Insider**<br><br>**Local Rule 6004-1(b)(iv)(A)** | Jeffries is not an insider of any of the Debtors. |
| **Agreements with Management**<br><br>**Local Rule 6004-1(b)(iv)(B)** | None. |
| **Releases**<br><br>**Local Rule 6004-1(b)(iv)(C)** | None. |
| **Competitive Bidding/Auction**<br><br>**Local Rule 6004-1(b)(iv)(D)**<br><br>**(Sections 11(i))** | The Agreement contemplates a private sale, however, the Agreement is subject to higher and better bids (a "Superior Proposal"). As set forth in more detail herein, if a Superior Proposal—"Qualified Bid" (defined below)—is filed, the Debtors will conduct an auction to determine the best and/or highest offer for the Claims. The Seller will determine such best and/or highest offer in good faith, after consultation with its outside legal counsel and financial advisors. |
| **Closing Conditions and Other Deadlines**<br><br>**Local Rule 6004-1(b)(iv)(E)**<br><br>**(Section 10)** | Closing shall occur no later than one (1) business day following the date of the approval of the Agreement by the United States Bankruptcy Court for the District of Delaware |
| **Good Faith Deposit**<br><br>**Local Rule 6004-1(b)(iv)(F)** | None. |

| | |
|---|---|
| **Interim Arrangements with Proposed Buyer**<br><br>**Local Rule 6004-1(b)(iv)(G)** | None. |
| **Proceeds Allocation**<br><br>**Local Rule 6004-1(b)(iv)(H)** | None. |
| **Tax Exemption**<br><br>**Local Rule 6004-1(b)(iv)(I)** | None. |
| **Record Retention**<br><br>**Local Rule 6004-1(b)(iv)(J)** | The proposed sale is not a sale of substantially all of the Debtors' assets. |
| **Sale of Avoidance Actions**<br><br>**Local Rule 6004-1(b)(iv)(K)** | None. |
| **Successor Liability**<br><br>**Local Rule 6004-1(b)(iv)(L)**<br><br>**(Section 3)** | The Debtors are seeking to sell the Claims free and clear of successor liability claims. |
| **Sale Free and Clear of Liens**<br><br>**Local Rule 6004-1(b)(iv)(M)**<br><br>**(Sections 1 and 3)** | The Claims shall be sold to the proposed Buyer free and clear of any liens, charges, easements, title defects, encumbrances, encroachments, hypothecations, security interests, claims, interests, leases, pledges, options to purchase or lease or otherwise acquire any interest, rights of first refusal and of first offer, conditional sales agreements, mortgages, proxies, voting trusts or agreements, restrictions of any kind, including restrictions on title, transfer, voting, receipt of income, use or exercise of any other attribute of ownership, or adverse claims of ownership or use and adverse monetary claims of any kind (collectively, "Encumbrances"). |
| **Credit Bid**<br><br>**Local Rule 6004-1(b)(iv)(N)** | None. |

| | |
|---|---|
| **Relief from B.R. 6004(h)** <br><br> **Local Rule 6004-1(b)(iv)(O)** | None. |
| **Assumed Liabilities** <br><br> **(Section 3)** | None. |
| **Excluded Liabilities** | None. |
| **Termination Events** <br><br> **(Section 11(i))** | The Sellers' may terminate the Agreement upon receipt of a Superior Proposal. |

15.     While the Debtors believe that the Agreement serves the best interest of the Debtors' estates, creditors and parties-in-interest, the Debtors also believe it is prudent at this time and in the best interests of their estates and creditors to implement the sale procedures (the "Sale Procedures") summarized below and, accordingly, intend to employ the Sale Procedures prior to a hearing on this Motion.

### III.     The Proposed Sale Procedures

16.     The Debtors propose to sell the Claims to Jeffries pursuant to the Agreement, however, if another interested party submits a Qualified Bid (defined below) according to the terms of the Sale Procedures, the Debtors will carry out an auction for the Claims (the "Auction"). The Debtors propose to implement the Sale Procedures described below in an effort to maximize the realizable value of the Claims for the benefit of the Debtors' estates, creditors, and other interested parties. The Sale Procedures contemplate an Auction process pursuant to which the Sale, as detailed in the Agreement, will be subject to higher or better offers. The Debtors are not seeking approval of Court-sanctioned bidding procedures in advance but, rather, propose conducting the Auction in connection with the proposed Sale Procedures prior to the hearing on this Motion (the "Sale Hearing"), so as to derive maximum value for such assets. The Debtors will present evidence

with respect to the Sale Process and the winning bid at the Sale Hearing. As described more fully below, only bidders who timely submit Qualified Bids (as defined below) may be eligible to participate in the Auction, unless otherwise agreed by the Debtors.

17. Specifically, the Debtors will implement the following Sale Procedures, on substantially the terms set forth below, for the Sale of the Claims and conduct the Auction in accordance therewith:

   a) **Bid Deadline: April 22, 2020 at 5:00 p.m. (ET).**[5]

   b) Qualified Bid: The Debtors will require a qualified bid (a "Qualified Bid") to meet the following requirements: (i) enclose a proposed purchase agreement (the "Purchase Agreement") for the Claims, and the proposed consideration, and a blackline against the Agreement with Jeffries; (ii) confirm that the offer shall remain open and irrevocable until the closing of a Sale to the Successful Bidder (as defined herein) or the Next Highest Bidder (as defined herein); (iii) be accompanied by a certified or bank check or wire transfer in an amount equal to 10% of the purchase price identified in the Purchase Agreement as a minimum good faith deposit (the "Minimum Deposit"), which Minimum Deposit shall be used to fund a portion of the purchase price provided for in the bid; (iv) not be conditioned on obtaining financing or the outcome of any due diligence by the bidder; and (v) fully disclose the identity of each entity that will be bidding for the Claims or otherwise participating in connection with such bid, and the complete terms of any such participation.

   c) Auction. If the Debtors receive more than one Qualified Bid for the Claims, an Auction with respect to the Sale will commence at the office of Debtors' counsel, Landis Rath & Cobb LLP, 919 Market Street, Suite 1800, Wilmington, DE 19801, on **April 24, 2020 at 10:00 a.m. (ET)**, or such later time and place as the Debtors may provide so long as such change is communicated reasonably in advance by the Debtors to all bidders, and other invitees.

   d) Auction Rules. If an Auction is held, the following rules for the Auction's conduct will be observed: (i) only a bidder who has submitted a Qualified Bid by the Bid Deadline (a "Qualified Bidder") will be eligible to participate at the Auction, provided however, that the Stalking Horse Bidder shall be deemed to be a qualified bidder; (ii) the minimum Qualified Bid amount for the Claims is $130,500.00; (iii) at the Auction, the minimum overbid

---

[5] Interested parties wishing to bid on the Claims should contact Craig M. Boucher cboucher@mackinacpartners.com.

    amount will be $5,000 and Qualified Bidders will be permitted to increase their bids, and bidding at the Auction will continue until such time as the highest or otherwise best offer is determined in accordance with these Sale Procedures or until such Auction is adjourned by the Debtors. Reasonable notice of the time and place for the resumption of the Auction will be given to all Qualified Bidders and counsel to the Senior Lenders, the Subordinated Creditor, and the Committee; (iv) immediately prior to concluding the Auction, the Debtors shall, in consultation with the Senior Lenders, the Subordinated Creditor and Committee, (a) review each Qualified Bid on the basis of its financial and contractual terms and the factors relevant to the Sale Process and the best interests of the Debtors' estates and creditors; (b) determine and identify the highest or otherwise best Qualified Bid (the "<u>Successful Bid</u>") and the Qualified Bidder submitting such bid (the "<u>Successful Bidder</u>"); (c) determine and identify the next highest or otherwise best Qualified Bid after the Successful Bid (the "<u>Next Highest Bid</u>") and the Qualified Bidder submitting such bid (the "<u>Next Highest Bidder</u>"); and (d) have the right to reject any and all bids; and (v) within one business day of the completion of the Auction, the Successful Bidder shall complete and execute all agreements, instruments, or other documents evidencing and containing the terms and conditions upon which the Successful Bid was made.

e)     <u>Acceptance of Successful Bid</u>. If an Auction is held, the Debtors shall be deemed to have accepted a Qualified Bid only when (i) such bid is declared the Successful Bid on the record at the Auction and (ii) definitive documentation has been executed in respect thereof. Such acceptance is conditioned upon approval by the Court of the Successful Bid and the entry of an Order approving the Sale and such Successful Bid.

f)     <u>Notice of Successful Bid</u>. If an Auction is held, as soon as reasonably practicable following the conclusion of the Auction, the Debtors shall file a Notice of Successful Bid. The Notice of Successful Bid shall identify the identity of the Successful Bidder, the amount of the Successful Bid, and shall include a substantially final version of the Purchase Agreement.

g)     **Sale Hearing. T.B.D.**

h)     <u>Reservation of Rights</u>. The Debtors reserve the right as they may reasonably determine, in consultation with the Senior Lenders, the Subordinated Creditor and the Committee, to be in the best interests of their estates to: (i) determine which bidders are Qualified Bidders; (ii) determine which bids are Qualified Bids; (iii) determine which Qualified Bid is the highest or otherwise best proposal and which is the next highest or otherwise best proposal, (iv) reject any bid that is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Sale Procedures or the requirements of the Bankruptcy Code or (c) contrary to the best interests of the Debtors and their estates; (v) remove the Claims

from the Auction; (vi) enter into one or more stalking horse agreements; (vii) waive terms and conditions set forth in these Sale Procedures with respect to all potential bidders; (viii) impose additional terms and conditions with respect to all potential bidders; (ix) extend the deadlines set forth herein; (x) adjourn or cancel the Auction and/or Sale Hearing in open court without further notice; and (xi) modify the Sale Procedures as they may determine to be in the best interests of their estates or to withdraw this Motion at any time with or without prejudice.

18. The Debtors believe that the process contemplated hereby will foster a competitive bidding atmosphere that will generate significant value for their estates.

## RELIEF REQUESTED

19. By this Motion, the Debtors seek entry of an order (i) authorizing the Sale of the Debtors' Claims free and clear of liens, claims, encumbrances, and interests, pursuant to a Purchase Agreement executed by and between the Debtors and the Proposed Purchaser, and (ii) granting related relief.

## BASIS FOR RELIEF REQUESTED

20. For the reasons explained below and throughout this Motion, the Debtors' decision to sell the Claims is a sound exercise of the Debtors' business judgment. Indeed, the Debtors are confident that the aforementioned process will generate the highest value for the Claims because (i) the Debtors will continue to accept bids to purchase the Claims, (ii) the Auction will foster a competitive bidding process through which the highest or otherwise best offer will be generated, and (iii) the Sale Procedures offer maximum flexibility and security to the Debtors in conjunction with selling the Claims in an expeditious and value-maximizing manner.

**I.      Sales of the Claims Should Be Approved.**

21. Bankruptcy Code section 363(b)(1) provides: "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Bankruptcy Code section 105(a) provides: "The Court may issue

any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  In pertinent part, Bankruptcy Rule 6004 states that, "all sales not in the ordinary course of business may be by private sale or by public auction."  Fed. R. Bankr. P. 6004(f)(1).  With respect to the notice required in connection with a sale, Bankruptcy Rule 2002(c)(1) states, in pertinent part, that:

> the notice of a proposed use, sale or lease of property . . . shall include the time and place of any public sale, the terms and conditions of any private sale and the deadline for filing objections.  The notice of a proposed use, sale or lease of property, including real estate, is sufficient if it generally describes the property.

Fed. R. Bankr. P. 2002(c)(1).

22. To approve the use, sale, or lease of property outside the ordinary course of business, the Court must find "some articulated business justification" for the proposed action. *See In re Abbotts Dairies, Inc.*, 788 F.2d 143, 145-47 (3d Cir. 1986) (implicitly adopting the "articulated business justification" and good-faith tests of *Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983)); *see also In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991) (concluding that the Third Circuit had adopted a "sound business purpose" test in *Abbotts Dairies)*; *Titusville Country Club v. PennBank (In re Titusville Country Club)*, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); *In re Indus. Valley Refrigeration & Air Conditioning Supplies, Inc.*, 77 B.R. 15, 19 (Bankr. E.D. Pa. 1987).

23. Generally, courts have applied four factors in determining whether a sale of a debtor's assets should be approved:  (i) whether a sound business reason exists for the proposed transaction; (ii) whether fair and reasonable consideration is provided; (iii) whether the transaction has been proposed and negotiated in good faith; and (iv) whether adequate and reasonable notice is provided.  *See Lionel*, 722 F.2d at 1071 (setting forth the "sound business purpose" test); *Abbotts Dairies*, 788 F.2d at 145-57 (implicitly adopting the articulated business justification test and

adding the "good faith" requirement); *Del. & Hudson Ry.*, 124 B.R. at 176 ("Once a court is satisfied that there is a sound business reason or an emergency justifying the pre-confirmation sale the court must also determine that the trustee has provided the interested parties with adequate and reasonable notice, that the sale price is fair and reasonable and that the purchaser is proceeding in good faith.").[6]

24. Here, the Sale of the Claims meets these requirements and, accordingly, the Debtors submit it should be approved. The Debtors submit that implementation of the Sale Procedures and Auction process as outlined herein will generate maximum interest in the Claims, thereby yielding the highest or otherwise best bids for such assets. Accordingly, the Debtors submit that the proposed Sale will be the culmination of an extensive process, and that the decision to sell the Claims to the Purchaser is adequately informed, reasonable, and in the best interests of the Debtors, their estates, and other stakeholders.

    **A.    The Sale Process is a Sound Exercise of the Debtors' Business Judgment.**

25. There is more than ample business justification to sell the Claims as set forth herein, and as such, an order granting the relief requested is a matter within the discretion of the Court and would be consistent with the provisions of the Bankruptcy Code. *See* 11 U.S.C. § 105(a). Subject to the Purchaser or Successful Bidder's willingness to provide fair and reasonable consideration, the Debtors' estates and creditors will benefit from the approval of the Sale without the added costs in terms of time and expenses associated with a Court-approved Sale Process.

---

[6] Even if the proposed Sale is deemed to be private, rather than public, this fundamental analysis does not change. *See, e.g., In re Ancor Exploration Co.*, 30 B.R. 802, 808 (Bankr. N.D. Okla. 1983) ("[T]he bankruptcy court should have wide latitude in approving even a private sale of all or substantially all of the estate assets not in the ordinary course of business under § 363(b)."). The bankruptcy court "has ample discretion to administer the estate, including authority to conduct public or private sales of estate property." *In re WPRV-TV, Inc.*, 143 B.R. 315, 319 (D.P.R. 1991), *vacated on other grounds*, 165 B.R. 1 (D.P.R. 1992); *accord In re Canyon Partnership*, 55 B.R. 520, 524 (Bankr. S.D. Cal. 1985).

26. The Debtors are fully liquidating all of their assets. The Claims are some of the few remaining assets of the Debtors' estates. As a result, it is imperative that the Debtors seek to monetize all of their assets in as efficient and expeditious manner as possible. Thus, the Debtors believe that the proposed Sale Process is in the best interests of the Debtors, their estates, and creditors and should go forward as soon as is practicable.

27. Simply put, in the Debtors' business judgment, selling the Claims through the aforementioned Sale Process is the best option for maximizing the overall value of these assets for the benefit of all stakeholders.

### B. The Proposed Sale Procedures Are Fair and Reasonable.

28. The Sale Procedures are designed to maximize the value received for the Claims and will allow for a timely Auction process while providing bidders with ample time and information to submit a timely Qualified Bid. The Sale Procedures are designed to ensure that the Claims will be sold for the highest or otherwise best possible purchase price under the circumstances of these Chapter 11 Cases. While the Debtors have already come to agreement with Jeffries, the Stalking Horse Bidder, the Agreement is subject to better and higher offers. To that end, the Debtors shall continue to subject the value of the Claims to market testing, and by permitting prospective purchasers to bid on the Claims, the Debtors shall ensure that the ultimate Sale price is an accurate reflection of the true value of the Claims. Similar procedures, pursuant to which liquidating chapter 11 debtors solicit bids and implement an auction process without first seeking court approval thereof, have been implemented in other chapter 11 cases in this district and others. *See e.g. In re Fred's, Inc., et al.*, Case No. 19-11984 (CSS); In *re Charming Charlie Holdings Inc.*, Case No. 19-11534 (CSS); *In re The Wet Seal LLC*, Case No. 17-10229 (CSS); *In re Anchor Blue Holding Corp.*, Case No. 11-10110 (PJW) (Bankr. D. Del. 2010); *In re Kid Brands, Inc.*, Case No. 14-22582 (Bankr. D.N.J. 2014). Accordingly, the Debtors and all parties-in-interest

can be assured that the consideration received for the Claims will be fair and reasonable, and the third prong of the *Abbotts Dairies* standard is satisfied. As discussed below, the "good faith" prong of the *Abbotts Dairies* standard is also satisfied in this instance.

29. In light of the marketing efforts and the nature of the assets, the Debtors believe that the Sale, whether through the Agreement to Jeffries or the Highest Bidder at an Auction, will provide fair and reasonable value for the Claims.

### C. The Sale is Proposed in Good Faith.

30. The Sale is being proposed in good faith. The Sale will be the product of good-faith, arms'-length negotiations between the Debtors, on the one hand, and the Proposed Purchaser, on the other. The Debtors believe that the Sale of the Claims to the Proposed Purchaser will not be the product of collusion or bad faith. No evidence exists to suggest that the Sale will be anything but the product of arms'-length negotiations between the Debtors and the Proposed Purchaser, conducted under the purview of the extensively negotiated Agreement or an Auction.

31. The Purchase Agreement ultimately executed by and between the Debtors and the Proposed Purchaser and subject to Court approval will be the culmination of a fair and open solicitation and negotiation process. The Sale Procedures are designed to ensure that no party is able to exert undue influence over the process. Under the circumstances, the Debtors intend to ask the Court to find that the Proposed Purchaser be afforded the protections that Bankruptcy Code section 363(m) provides to a good-faith purchaser. Furthermore, the Sale Procedures are designed to prevent the Debtors or the Proposed Purchaser from engaging in any conduct that would cause or permit the Purchase Agreement, or the Sale of the Claims to the Stalking Horse Bidder, the Successful Bidder or the Next Highest Bidder, to be avoided under Bankruptcy Code section 363(n).

**D.  Adequate and Reasonable Notice of the Sale Will Be Provided.**

32.  The Debtors will provide adequate notice of this Motion to parties-in-interest, as required by the applicable procedural rules.  *See* Fed. R. Bankr. P. 2002(c)(1) (notice must contain "the time and place of any public sale, the terms and conditions of any private sale and the time fixed for filing objections."); *see also Del. & Hudson Ry.*, 124 B.R. at 180 (the disclosures necessary in such a sale notice need only include the terms of the sale and the reasons why such a sale is in the best interests of the estate and do not need to include the functional equivalent of a disclosure statement).

33.  Numerous potential Qualified Bidders have already received information regarding the Claims Sale Process from the Debtors.  In addition, the Debtors will serve this Motion on all parties that have expressed interest, or the Debtors believe may have an interest, in purchasing the Claims.  Those parties will be alerted to the tentative Auction, have an opportunity to participate in the Auction, and can submit other or additional offers prior to the Bid Deadline.  Consistent with their fiduciary duties to their estates, the Debtors will consider all such offers.

34.  To summarize, in the Debtors' informed business judgment, the Debtors will continue to accept bids for the Claims, conduct an Auction prior to the Sale Hearing with respect thereto (if competing bids are submitted), and complete the disposition of the Claims in a manner best-tailored to generate value for the Debtors' estates while simultaneously limiting the deterioration in value of the Claims and the Debtors' exposure to burdensome and unnecessary administrative expenses.  For these reasons, the Debtors' submit that the Court should approve the sale of the Claims to the Proposed Purchaser selected by the Debtors pursuant to the Sale Procedures.

**II.    The Sales Satisfies the Requirements of Bankruptcy Code Section 363(f).**

35.    Under Bankruptcy Code section 363(f), a debtor in possession may sell all or any part of its property free and clear of any and all liens, claims, or interests in such property if (i) such a sale is permitted under applicable non-bankruptcy law; (ii) the party asserting such a lien, claim, or interest consents to such sale; (iii) the interest is a lien and the purchase price for the property is greater than the aggregate amount of all liens on the property; (iv) the interest is the subject of a *bona fide* dispute; or (v) the party asserting the lien, claim, or interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such interest. 11 U.S.C. § 363(f); *Citicorp Homeowners Serv., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (noting that Bankruptcy Code section 363(f) is written in the disjunctive; therefore, a court may approve a sale "free and clear" provided at least one of the subsections is met).

36.    Because the Debtors expect that they will satisfy the second and fifth of these requirements, if not others as well, approving the sale of the Claims free and clear of all adverse interests is warranted.  Furthermore, courts have held that they have the equitable power to authorize sales free and clear of interests that are not specifically covered by section 363(f).  *See, e.g., In re Trans World Airlines, Inc.*, 2001 WL 1820325 at *3, 6 (Bankr. D. Del. March 27, 2001); *Volvo White Truck Corp. v. Chambersburg Beverage, Inc. (In re White Motor Credit Corp.)*, 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987).

## NOTICE

37.    The Debtors will provide notice of this motion to: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the Official Committee of Unsecured Creditors; (c) the Senior Lenders; (d) the Subordinated Creditor; (e) the United States Attorney's Office for the District of Delaware; and (f) all parties who have requested notice in these Chapter 11 Cases pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the

relief requested, no other or further notice need be given.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other and further relief as is just and proper.

Dated: April 1, 2020
      Wilmington, Delaware

**LANDIS RATH & COBB LLP**

 /s/ *Nicolas E. Jenner*
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
Nicolas E. Jenner (No. 6554)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email: landis@lrclaw.com
      mcguire@lrclaw.com
      jenner@lrclaw.com

*Counsel to the Debtors and Debtors-In-Possession*