## EXHIBIT B

**Asset Purchase Agreement Between Schurman Fine Papers and
Jefferies Leveraged Credit Products LLC**

## ASSIGNMENT OF CLAIM

THIS AGREEMENT (hereinafter, the "Purchase Agreement"), made and entered into as of this 1 day of April, 2020, by and among Jefferies Leveraged Credit Products LLC ("Buyer") and Schurman Fine Papers ("Seller").

## RECITALS

A.    This Purchase Agreement shall govern the sale of all of Seller's claims, interests and causes of action arising from or related to the involvement of Seller, as a plaintiff, member of a class, or otherwise a claimant, in in any of the actions and proceedings consolidated in the multi-district litigation that is currently pending in the United States District Court for the Eastern District of New York, MDL No. 1720 and Civil No. 05-5075 (the "Class Action") against Visa Inc. ("Visa") and MasterCard Inc. ("Mastercard") in the Visa/MasterCard Interchange Fee Litigation (the "Assigned Claim") and other defendants, alleging antitrust violations in relation to certain practices with respect to fees incurred for the acceptance of Visa and MasterCard credit and debit cards from January 1, 2004 to the present (the "Eligibility Period"), and (ii) any other claims, interests and causes of action of Seller that arise from or are in any way related to (but solely to the extent related to) the facts or circumstances that gave rise to the Class Action.

B.    Buyer desires to purchase all of the Assigned Claim from Seller, and Seller desired to sell the Assigned Claim to Buyer on the terms and conditions set forth herein with effect on or after the date upon which Buyer delivers the Purchase Price to Seller (as such term is defined below) (the "Closing Date").

NOW, THEREFORE, in consideration of the foregoing, the parties hereto agree as follows:

1.    ***Sale of Assigned Claim.***    Upon the Closing Date and subject to terms and conditions hereof, Seller agrees to sell, assign, transfer and convey to Buyer, and Buyer agrees to purchase and acquire from Seller the Assigned Claim, free and clear of any liens, charges, easements, title defects, encumbrances, encroachments, hypothecations, security interests, claims, interests, leases, pledges, options to purchase or lease or otherwise acquire any interest, rights of first refusal and of first offer, conditional sales agreements, mortgages, proxies, voting trusts or agreements, restrictions of any kind, including restrictions on title, transfer, voting, receipt of income, use or exercise of any other attribute of ownership, or adverse claims of ownership or use and adverse monetary claims of any kind (collectively, "Encumbrances").  Upon the settlement of the Transactions (as defined below), Buyer shall have full legal and beneficial title to the Assigned Claim, shall be entitled to identify itself as the owner of the Assigned Claim for all purposes, including, without limitation, that (i) Buyer will be entitled to receive and direct the receipt of all distributions in respect of the Assigned Claim whether in the form of cash, securities, instruments or other property (collectively, "Distributions") and (ii) Buyer shall have full, direct voting control with respect to any action to be taken with respect to the Assigned Claim (an "Act").  After the Closing Date, Seller shall not be entitled to identify itself as the owner of the Assigned Claim or object in any forum, including any court hearing in connection with the Class Action, to the terms of this Purchase Agreement or the sale and purchase contemplated hereby.

2.    ***Purchase Price.***  On the Closing Date, pursuant to receipt of the deliveries set forth in Section 11, Buyer shall deliver to Seller a payment of $120,500 (the "Purchase Price") by wire transfer of immediately available funds to the account set forth on Schedule I hereto.

3.    ***No Assumption of Liabilities by Buyer.***  Seller is not transferring and Buyer is not assuming any liabilities of Seller.

4.    ***Warranties and Representations of Seller.***    Seller makes the following representations and warranties to Buyer, which shall be true as of the date hereof and as of the Closing Date:

(a)    ***Organization of Seller.***  Seller is duly organized, validly existing and in good standing under the laws of the jurisdiction of its formation.

(b)    ***Authorization; Title.***  Seller has all necessary power and authority to execute, deliver, and perform its obligations under this Purchase Agreement and each of the other documents, if any, to be executed or delivered in connection with this Purchase Agreement (the "Transaction Documents") and to consummate the Transactions.  This Purchase Agreement and any Transaction Documents executed prior to the date hereof have been duly authorized, executed and delivered by Seller and, assuming due execution and delivery by Buyer, constitute legally valid and binding obligations of Seller, enforceable against Seller in accordance with their respective terms, except that such enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting the rights of creditors generally or by general equitable principles.   The Seller owns the Assigned Claim free and clear of all Encumbrances and can convey and transfer to Buyer good legal title to the Assigned Claim "as is, where is" except as otherwise set forth herein.  The Assigned Claim is not subject to any factoring agreement.  The Assigned Claim is not subject to any action, causes of action, proceedings, controversies, liabilities, obligations, rights, suits, damages, objections to claims, defenses, claims or right of setoff, recoupment, reduction, impairment, avoidance, disallowance, clawback, subordination or preference action, in whole or in part, whether known or unknown, reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, assertable directly or derivatively, existing or hereafter arising in contract, law, equity or otherwise, that have been or may be asserted by any other party.  Seller has not exercised and shall not exercise any right to opt out of the Class Action Case or the Settlement, nor has Seller taken any action (of failed to take any action) that would result in Seller being ineligible to participate as a member of a class in the Class Action Case or the settlement.

(c)    ***No Violation***.  The execution and delivery of this Purchase Agreement and the Transaction Documents by Seller, and the performance by Seller of its obligations hereunder and thereunder, will not (i) result in a breach or violation of any provision of Seller's organizational documents, (ii) violate or breach any statute, law, writ, order, rule or regulation of any government, governmental agency, authority, court or other tribunal (collectively, "Governmental Authority") applicable to Seller, or (iii) breach or result in default of any judgment, injunction, decree or determination of any Governmental Authority applicable to Seller.

(d)      ***Compliance with Law.***

(1)      Seller has complied in all material respects with all Applicable Laws.

(2)      For the purpose of Sections 6 and 7, "Applicable Laws" means any law, regulation, or rule applicable to this Purchase Agreement or to either party.

(e)      ***Consents and Approvals***.  Neither the execution and delivery by Seller of this Purchase Agreement, nor the performance by Seller of its obligations under this Purchase Agreement, requires the consent, approval, order or authorization of, or registration with, or the giving notice to, any Governmental Authority, except such as have been obtained, made or given or are otherwise set forth in this Purchase Agreement.

(f)      ***Non-reliance***.  Seller (i) is a sophisticated investor and has such knowledge and experience in financial and business matters as to be capable of evaluating independently the merits, risks and suitability of entering into this Purchase Agreement and the Transactions, (ii) has adequate information to make an informed decision regarding the sale of the Assigned Claim, (iii) has independently and without reliance upon Buyer, and based on such information as it has deemed appropriate, made its own analysis and decision to enter into this Purchase Agreement, except that it has relied upon the Buyer's express representations, warranties, covenants, agreements and indemnities in this Purchase Agreement, (iv) is able to bear the risks attendant to the Transactions, (v) acknowledges that the Buyer has not given it any investment advice, credit information or opinion on whether the sale of the Assigned Claim is prudent, and (vi) is dealing with Buyer on a professional arm's-length basis and has been informed by Buyer that neither Buyer nor any of its affiliates has undertaken or is undertaking to provide impartial investment advice, or to give advice in a fiduciary capacity, in connection with the Purchase Agreement or any of the Transactions.

(g)      ***Interchange Fees***.  Set forth in Schedule 4(d) attached hereto is a complete and accurate list, broken out by year, of the aggregate dollar amount of all interchange fees paid by Seller and its subsidiaries, during calendar years 2004 through January 2019, to Visa, Mastercard and the other defendants in the Action (the "Interchange Fee Schedule"). Seller represents that the Interchange Fee Schedule sets forth all interchange fees paid by Seller during the period of 2004 through January 2019.

(h)      ***Brokers and Finders***.  Seller has not employed any investment banker, broker or finder or incurred any liability for any investment banking fees, brokerage fees, commissions or finders' fees in connection with this transaction, and Buyer shall not have any liability or obligation with respect to any fees, commissions or other amounts payable to Broker in connection with such retention.

(i)      ***Entirety of Claims***.  The Assigned Claim is the only known antitrust claim that Seller, or any of its affiliates hold against Visa, MasterCard and the other defendants named in the Class Action and their respective affiliates, with regards to alleged antitrust violations in relation to certain practices with respect to merchant processing fees and merchant processing

agreements attributable to merchants that accepted Visa or MasterCard credit or debit cards beginning on January 1, 2004.

          (j)     ***Authorized Claimant.*** Seller is eligible to be an "Authorized Claimant" entitled to receive payments as provided in the Superseding and Amended Definitive Class Settlement Agreement of the Rule 23(b)(3) Class Plaintiffs and the Defendants executed in connection with the Class Action and granted preliminary approval by order dated January 24, 2019 (the "Class Settlement Agreement") and Seller is a member of the Rule 23(b)(3) Settlement Class as defined therein.

          (k)     ***No Payments.*** No payment or other distribution has been received by Seller, or by any third party on behalf of Seller, in full or partial satisfaction of, or in connection with, the Assigned Claim;

          (l)     ***[Reserved]***;

          (m)     ***Chain of Title.*** Seller is the original holder of the Assigned Claim and has not acquired the Assigned Claim from any other party;

          (n)     ***Communications.*** Neither Seller nor any its affiliates has had any direct, material correspondence (verbal or written) with Visa, MasterCard or any other defendant in the Class Action regarding the Assigned Claim;

          (o)     ***No Bad Acts.*** Seller has not engaged in any acts, conduct or omissions that might result in Purchaser receiving in respect of the Assigned Claim proportionately less payments or distributions or less favorable treatment (including the timing of distributions) than other similarly situated interchange fee claimants;

          (p)     ***No Objections.*** Except for defenses asserted in public court filing in the Class Action, no objection to the Assigned Claim has been filed or threatened; and

          (q)     ***Supporting Documents.*** Seller has made available Buyer true and correct copies of all available agreements, instruments, invoices, purchase orders, proofs of delivery, or other documents, either in electronic format or in hard copies, evidencing or pertaining in any way to the Assigned Claim including, without limitation, the Visa and MasterCard transactions processed by Seller and its affiliates and the interchange fees paid by Seller and its affiliates during the Eligibility Period, including, without limitation, all entity names and Federal Tax ID numbers for all entities that accepted credit cards and/or debit cards at any time during the Eligibility Period, addresses for all United States locations of the Seller that have accepted credit and/or debit cards at any time during the Eligibility Period, all credit/debit processors used by Seller and its affiliates during the Eligibility Period in the United States, and the dates each was used, all merchant ID numbers used by Seller and its affiliates in the United States, and the open and close dates for each number, total MasterCard sales volume in the United States, by month, during the Eligibility Period, and total Visa sales volume in the United States, by month, during the Eligibility Period, total MasterCard discount/merchant fees, in the United States, by month, total Visa discount/merchant fees, in the United States, by month, during the Eligibility Period.

5.      ***Warranties and Representations of Buyer.***  Buyer hereby represents and warrants to Seller, which representations and warranties are made for the express purpose of inducing Seller to enter into this Purchase Agreement, and which representations and warranties shall be true as of the date hereof and as of the Closing Date:

(a)      ***Organization of Buyer.***  Buyer is duly organized, validly existing and in good standing under the laws of the jurisdiction of its formation.

(b)      ***Authorization.***  Buyer has all necessary power and authority to execute, deliver, and perform its obligations under this Purchase Agreement and the Transaction Documents and to consummate the Transactions.  This Purchase Agreement and any Transaction Documents executed prior to the date hereof have been duly authorized, executed and delivered by Buyer and, assuming due execution and delivery by Seller, constitute legally valid and binding obligations of Buyer, enforceable against Buyer in accordance with their respective terms, except that such enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting the rights of creditors generally or by general equitable principles.

(c)      ***No Violation***.  The execution and delivery of this Purchase Agreement and the Transaction Documents by Buyer, and the performance by Buyer of its obligations hereunder and thereunder, will not (i) result in a breach or violation of any provision of Buyer's organizational documents, (ii) violate or breach any statute, law, writ, order, rule or regulation of any Governmental Authority applicable to Seller, or (iii) breach or result in default of any judgment, injunction, decree or determination of any Governmental Authority applicable to Buyer.

(d)      ***Compliance with Law***.  Buyer has complied in all material respects with all Applicable Laws.

(e)      ***Consents and Approvals***.  Neither the execution and delivery by Buyer of this Purchase Agreement, nor the performance by Buyer of its obligations under this Purchase Agreement, requires the consent, approval, order or authorization of, or registration with, or the giving notice to, any Governmental Authority, except such as have been obtained, made or given or are otherwise set forth in this Purchase Agreement.

(f)      ***Brokers and Finders***.  Neither Buyer nor any of its affiliates has employed any investment banker, broker or finder or incurred any liability for any investment banking fees, brokerage fees, commissions or finders' fees in connection with this transaction.

(g)      ***Non-reliance***.  Buyer (i) is a sophisticated investor and has such knowledge and experience in financial and business matters as to be capable of evaluating independently the merits, risks and suitability of entering into this Purchase Agreement and the Transactions, (ii) has adequate information to make an informed decision regarding the purchase of the Assigned Claim, (iii) has independently and without reliance upon Seller, and based on such information as it has deemed appropriate, made its own analysis and decision to enter into this Purchase Agreement, except that it has relied upon the Seller's express representations, warranties, covenants, agreements and indemnities in this Purchase Agreement, (iv) is able to bear the risks attendant to the Transactions, (v) acknowledges that the Seller has not given it any investment advice, credit information or opinion on whether the purchase of the Assigned Claim is prudent, and (vi) is

dealing with Seller on a professional arm's-length basis and has been informed by Seller that neither Seller nor any of its affiliates has undertaken or is undertaking to provide impartial investment advice, or to give advice in a fiduciary capacity, in connection with the Purchase Agreement or any of the Transactions.

6.      ***Survival***.  All representations, warranties, covenants and agreements made by either party and contained herein shall survive the execution and delivery of this Purchase Agreement.

7.      ***Post-Closing Litigation Support***.

(a)      Seller hereby irrevocably appoints Buyer as its true and lawful attorney in fact and authorizes Buyer to act in Seller's name, place and stead, or otherwise, to demand, sue for, compromise and recover all such sums of money that now are or that hereafter might become due and payable for or on account of the Assigned Claim, and grants to Buyer full authority to do all things necessary to enforce the Assigned Claim, including, but not limited to, the right to file a claim or claims in the Class Action or in any other case or forum, on account of the Assigned Claim.

(b)  To the extent that Seller is still recognized as the holder following the Closing Date, Seller shall follow the written directions (and not act without the written approval) of Buyer in respect of any actions to be taken by Seller in respect of the Class Action (including, if requested by Buyer, Seller shall act as direct litigation party in each of the Class Action, shall use good faith efforts to continue to prosecute the Assigned Claim and shall follow the written directions (and not act without the written approval) of Buyer in respect of any actions to be taken by Seller in respect of the Class Action) and Buyer shall have exclusive control over all decision making in respect of settlement decision (including any negotiations in connection therewith) and all litigation strategy in general.  Seller shall provide Buyer with written notice of all documents filed in the Class Action, including, but not limited to, any memorials, notices, orders, pleadings, briefs, motions, or other documents presented to any party or filed with the courts relating to the Class Action and information requested by Buyer relating to the status of any demands upon, negotiations with or proposals made by or to any adverse party, including any litigation, settlement, alternative dispute resolution proceedings, appeals and any efforts to enforce any rights relating to the Assigned Claim or the Class Action.  Regardless, Seller, at Buyer's expense, shall use commercially reasonable efforts to (x) promptly make available for consultation or witness purposes its officers, employees, consultants or agents who (i) are employed or retained by Seller or its affiliates at the time of such request and (ii) have direct expertise or knowledge with respect to the Assigned Claim, who shall be made available to Buyer upon reasonable advance notice during normal business hours; provided, that such assistance shall not interfere with the normal operations of Seller's business; and (y) promptly provide to Buyer any documents or communications, whether in hard copy, electronic form or otherwise, that are in the possession, custody or control of Seller or its affiliates or their respective officers, employees, attorneys, accountants, advisors, experts, consultants or agents which are in any way related to Buyer's prosecution and/or defense of the Assigned Claim or the subject matter of the Class Action, including, without limitation, documents sufficient to calculate and prove the interchange fees paid by Seller,

Seller or their affiliates after the Closing Date (collectively, the "Supporting Documents"), solely to the extent that Buyer reasonably believe any such persons, documents, or communications may reasonably be useful or required in connection with any legal, administrative or other proceedings involving the Assigned Claim.  Seller agrees to maintain all Supporting Documents until the earlier of (i) Buyer requesting such Supporting Documents or (ii) Buyer providing written notice to Seller that the Supporting Documents are no longer necessary to the administration of the Assigned Claim.

8.      ***Distributions and Payments***.  If for any reason, Seller should receive a Distribution, the aforementioned shall constitute property of Buyer to which Buyer have an absolute right. Seller shall hold such Distribution in trust and will at its own expense, deliver to Buyer any such Distribution in the same form received, together with any endorsements or documents necessary to transfer such property to Buyer within two (2) business days of receipt in the case of cash and five (5) business days in the case of securities, instruments or any other property.

9.      ***Further Assurances***.  Each party agrees to (i) execute and deliver, or cause to be executed and delivered, all such other and further agreements, documents and instruments and (ii) take or cause to be taken all such other and further actions as the other party may reasonably request to effectuate the intent and purposes, and carry out the terms, of this Purchase Agreement and the Transaction Documents.  Seller agrees that, upon and after the sale of the Assigned Claim to Buyer in accordance with the terms hereunder, it will not take any action that is inconsistent with Buyer' ownership of the Assigned Claim.

10.     ***Items Delivered on the Closing Date.***  Subject to the conditions set forth herein, on the Closing Date, which shall occur no later than one (1) business day following the date of the approval of the Purchase Agreement by the United States Bankruptcy Court for the District of Delaware, the following items shall be delivered from one party to the other (each of which shall be a condition to the obligations of the parties hereto) and the following shall be consummated:

(a)     Seller shall deliver to Buyer a validly executed bill of sale, in the form attached hereto as Exhibit A (the "Bill of Sale"), for the Assigned Claim dated as of the Closing Date; and

(b)     Buyer shall deliver to Seller a wire transfer of funds in an amount equal to the Upfront Payment in accordance with the wire instructions set forth on Schedule I to the Bill of Sale; and

11.     ***Miscellaneous Provisions.***

(a)     ***Severability.***  If any provision of this Purchase Agreement shall be held invalid or unenforceable, such invalidity shall attach only to such provision and shall not affect or render invalid or unenforceable any other provisions of this Purchase Agreement, and this Purchase Agreement shall be construed as if such provision had been drawn so as not to be invalid or unenforceable.

(b)     ***Integration.***  This Purchase Agreement and all other documents, instruments or agreements delivered pursuant to the terms hereof or in connection herewith contain a complete and exclusive statement of all the arrangements between the parties hereto, and all prior

negotiations, agreements, and understandings, written or oral, between the parties hereto are superseded by this Purchase Agreement.

(c)    *Notices.*    Any notice, demand, claim, or other communication under this Purchase Agreement shall be in writing and shall be made by hand delivery, first-class mail (registered or certified return receipt requested) or overnight courier warranting next-day delivery to the following addresses:

| If to Buyer: | If to Seller: |
|---|---|
| Jefferies Leveraged Credit Products LLC<br>520 Madison Avenue<br>New York, NY 10022<br>Attention: General Counsel<br><br><br>Email: bmcloughlin@jefferies.com | Schurman Fine Papers<br>300 Oak Bluff Lane<br>Goodlettsville, Tennessee 37072<br>Attn: Craig Boucher<br>(cboucher@mackinacpartners.com) |

All such notices and communications shall be deemed to have been duly given: at the time delivered by hand, if personally delivered; two (2) business days after being deposited in the mail, postage prepaid, if mailed; and the next business day after timely delivery to the courier, if sent by overnight air courier warranting next-day delivery.  Any party may change the address to which each such notice or communication shall be sent by giving written notice to the other parties of such new address in the manner provided herein for giving notice.

(d)    *Successors and Assigns.*    This Purchase Agreement shall inure to and be binding upon the permitted successors, transferees, heirs and assigns of the parties hereto.  Buyer may assign or transfer any of its rights to the Assigned Claim or its rights hereunder without the prior written consent of Seller.

(e)    *Section Headings.*    The headings of the section and subsections in this Purchase Agreement are solely for convenience of reference and shall not be deemed to constitute a part thereof or affect its interpretation.

(f)    *Counterparts.*    This Purchase Agreement may be executed in several counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same agreement.  This Purchase Agreement can be executed by facsimile or email.

(g)    *Governing Law.*    This Purchase Agreement shall be governed by and construed in accordance with the laws of the State of New York (without regard to any conflicts of law provision that would require the application of the laws of any other jurisdiction), and each party irrevocably and unconditionally submits to and accepts the exclusive jurisdiction of the United States District Court for the Southern District of New York located in the Borough of Manhattan or the courts of the State of New York located in the County of New York for any action, suit or proceeding arising out of or based upon these Sale Procedures or any matter relating

to them, and waives any objection that it may have to the laying of venue in any such court or that any such court is an inconvenient forum or does not have personal jurisdiction over it.

        *(h)*    ***Bankruptcy Court Approval***.  The parties acknowledge that this Purchase Agreement is subject to approval of the United States Bankruptcy Court for the District of Delaware in all respects before the Transaction can be consummated.

        *(i)*    ***Termination by Seller.***  Seller may terminate this Agreement by written notice delivered by Sellers to Buyer if, at any time prior to the Closing, the Sellers receive a Superior Proposal and Sellers have provided written notice to Buyer that they are prepared to terminate this Agreement to enter into a contract with respect to such Superior Proposal, which notice shall include the material terms and conditions of the transaction that constitutes a Superior Proposal (but shall not be required to include the identity of the Person making such Superior Proposal.  "Superior Proposal" means a bona fide written offer to purchase, directly or indirectly, all or substantially all of the Acquired Assets which each Seller determines in good faith, after consultation with its outside legal counsel and financial advisors, is on terms and conditions more favorable to the estate of each Seller than those contemplated by this Agreement, taking into account all material financial, regulatory, legal and other aspects of such proposal, including any cash component thereof, any financing thereof, any conditions thereto and the likelihood and timing of consummation and any other aspects of such proposal as each Seller deems relevant.

        *(j)*    ***Amendment.***  This Purchase Agreement may only be amended by a writing signed by each of the parties, and any term or provision of this Purchase Agreement may only be waived in a writing signed by the party to be charged with such waiver.

        *(k)*    ***Costs.***  Except as provided herein, each of the parties hereto shall bear its own expenses in connection with the negotiation, execution and consummation of the Transactions.

        *(l)*    ***Jointly Negotiated***.  Seller and Buyer hereby agree and acknowledge that this Purchase Agreement shall be deemed to have been jointly drafted and that the rule of construction that ambiguities in an agreement or contract may be construed against the drafter shall not apply to the construction or interpretation of this Purchase Agreement.

        (m)    ***Waiver of Jury Trial***.  EACH PARTY HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT THAT IT MAY HAVE TO TRIAL BY JURY IN ANY LAWSUIT, ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHT UNDER THIS PURCHASE AGREEMENT OR ANY AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT DELIVERED OR TO BE DELIVERED IN CONNECTION WITH THIS PURCHASE AGREEMENT AND AGREES THAT ANY LAWSUIT, ACTION OR PROCEEDING WILL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY.

        *(n)*    ***Confidentiality.***  The details of the Transactions shall remain confidential except that any party may disclose such details and this Purchase Agreement (i) if required to do so by any law, court or regulation including in a motion to approve the Transactions in any bankruptcy court or any court in the Class Action, (ii) to any banking, regulatory or examining

authority, (iii) as required or advisable to implement or enforce or give effect to the Transactions, (iv) if its attorneys advise it that it has a legal obligation to do so or that failure to do so may result in it incurring a liability to any other entity, (v) to its affiliates and to its and its affiliates' respective professional advisors, auditors, employees, professionals, representatives, officers, directors, managers, members and agents, each of whom shall also agree to the confidentiality terms herein; or (vi) actual or potential transferees of Buyer who agree to maintain the confidentiality of such information and documents in accordance with this Section 12(l).

**IN WITNESS WHEREOF**, the parties have duly executed this Purchase Agreement on the date first above written.

**BUYER**:                                              **SELLER**:

JEFFERIES LEVERAGED CREDIT                Schurman Fine Papers
PRODUCTS LLC

By: _____            By: _____
    Name:   William P. McLoughlin         Name: Craig M. Boucher
    Title:    Senior Vice President         Title: Co-Chief Restructuring Officer

## EXHIBIT A: BILL OF SALE

For good and valuable consideration received from Jefferies Leveraged Credit Products LLC ("Buyer"), receipt of which is hereby acknowledged by [Schurman Fine Papers] ("Seller"), Seller hereby sells, transfers, conveys, delivers and assigns to Buyer the Assigned Claim (as defined in the Assignment of Claim by the Seller dated as of April 1, 2020 (the "Purchase Agreement")).

This Bill of Sale is made and delivered pursuant to, and is subject to all of the terms of the Purchase Agreement.  Each capitalized term used but not defined in this Bill of Sale shall have the meaning ascribed to it in the Purchase Agreement.

IN WITNESS WHEREOF, Seller has caused this Bill of Sale to be duly executed as of March ____, 2020.

[Schurman Fine Papers]


By: _____
     Name: Craig Boucher
     Title: Co-Chief Restructuring Officer

**SCHEDULE I:  WIRE INSTRUCTIONS**

***To Seller:***

Bank Name:
ABA #:
Account Name:
Account No.:
Attention:
Reference:

***To Buyer:***

Bank Name:
ABA #:
Account Name:
Account No.:
Attention:
Reference:

## SCHEDULE 4(g): INTERCHANGE FEES
$13,508,735